Case No. 03-20226
_____

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

FRED FREUDENSPRUNG

*Plaintiff-Appellant*

v.

OFFSHORE TECHNICAL SERVICES, INC.; WILLBROS USA, INC.;
WILLBROS ENGINEERS, INC.; WILLBROS INTERNATIONAL, INC.;
WILLBROS WEST AFRICA, INC.; WILLBROS GROUP, INC.

*Defendants-Appellees*
_____

AN APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION
_____

**BRIEF OF APPELLEE,
OFFSHORE TECHNICAL SERVICES, INC.**
_____

Kenneth G. Engerrand
Michael A. Varner
BROWN SIMS, P.C.
1177 West Loop South, Tenth Floor
Houston, Texas 77027-9007
Tel:  713-629-1580
Fax:  713-629-5027

*Attorneys of Record for Appellee,
Offshore Technical Services, Inc.*

Case No. 03-20226

FRED FREUDENSPRUNG

*Plaintiff-Appellant*

v.

OFFSHORE TECHNICAL SERVICES, INC.; WILLBROS USA, INC.;
WILLBROS ENGINEERS, INC.; WILLBROS INTERNATIONAL, INC.;
WILLBROS WEST AFRICA, INC.; WILLBROS GROUP, INC.

*Defendants-Appellees*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1.    Plaintiff-Appellant, Fred Freudensprung
       24287 CR 332
       Route 2, Box 216
       Sweeny, Texas 77480

2.    Counsel for Plaintiff-Appellant:

       a.    R. Blake Brunkenhoefer
             Brunkenhoefer & Hall, P.C.
             555 N. Carancahua , 1770 Tower II
             Corpus Christi, Texas 78478

       b.    Russell G. Burwell
             Burwell Burwell & Nebout
             1501 Amburn Road, Suite 9
             Texas City, Texas 77591

i

     c.     Cliff Gordon
             Huseman & Pletcher
             600 Leopard, Suite 2100
             Corpus Christi, Texas 78473

3.     Defendant-Appellee Offshore Technical Services, Inc.
       149 April Wind East
       Montgomery, Texas 77356

       Creekwood Office Building, Suite 2A
       12818 Highway 105 West
       Conroe, Texas 77304

4.     Counsel for Defendant-Appellee Offshore Technical Services, Inc.:
       Kenneth G. Engerrand
       Michael A. Varner
       Brown Sims, P.C.
       1177 West Loop South, Tenth Floor
       Houston, Texas 77027

5.     Insurer for Defendant-Appellee Offshore Technical Services, Inc.:
       ACE American Insurance Company
       Two Liberty Place
       1601 Chestnut Street
       Philadelphia, Pennsylvania 19103

6.     ACE American Insurance Company is a member company in INA Holdings:
       INA Holdings
       Two Liberty Place
       1601 Chestnut Street
       Philadelphia, Pennsylvania 19103

7.     INA Holdings is a part of ACE Ltd., which is a publicly owned holding
       company
       ACE Ltd.
       17 Woodbourne Avenue
       Hamilton HM 08 Bermuda

8.      Insurer of Defendant Offshore Technical Services, Inc.:
        Texas Mutual Insurance Company f/k/a
        Texas Workers' Compensation Insurance Fund
        221 West 6th Street, Suite 300
        Austin, Texas 78701

9.      Defendants-Appellees:

        a.      Willbros West Africa, Inc.
                Dresdner Bank Building
                8th Floor, 50th Street
                Apartado 850048
                Panama 5, Republic of Panama

        b.      Willbros Engineers, Inc.

        c.      Willbros International, Inc.
                Republic of Panama

        d.      Willbros USA, Inc.

        e.      Willbros Group, Inc.
                Plaza Bancomer Building
                8th Floor, 50th Street
                Apartado 6307
                Panama 5, Republic of Panama

10.     Counsel for the Willbros Defendants-Appellees:
        Michael D. Murphy
        Susan C. Stevenson
        Hays, McConn, Rice & Pickering, P.C.
        400 Two Allen Center
        1200 Smith Street
        Houston, Texas 77002

11.    Insurer for the Willbros Defendants:
       AIU North America (Texas), Inc.
       8144 Walnut Hill Lane, Suite 1600
       Dallas, Texas 75231


_____

Kenneth G. Engerrand
Michael A. Varner
Attorneys of Record for Appellee,
Offshore Technical Services, Inc.

## <u>REQUEST FOR ORAL ARGUMENT</u>

Appellee Offshore Technical Services, Inc. requests oral argument because Offshore Technical believes oral argument would assist this Court in analyzing and fully understanding the jurisdictional issues and the numerous and complex subissues in this case.

# **TABLE OF CONTENTS**

**Pages**

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . . . . . . . . . . . . . . . . . . i

REQUEST FOR ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A.    The Plaintiff Did Not Timely File His Appeal . . . . . . . . . . . . . . . . . 9

    B.    The District Court Properly Stayed the Case
        In Favor of Contractually Agreed-Upon Arbitration . . . . . . . . . . . . 14

    C.    Willbros West Africa was Properly Dismissed
        for Lack of Personal Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . 23

        1.    The Plaintiff Has Failed to Show Specific
            Jurisdiction Over Willbros West Africa . . . . . . . . . . . . . . . . 25

        2.    The Plaintiff Has Failed to Show General
            Jurisdiction Over Willbros West Africa . . . . . . . . . . . . . . . . 26

3.   Willbros West Africa Never Made A
General Appearance and Never Waived ................ 28
Personal Jurisdiction

4.   Willbros West Africa Never Consented to
Jurisdiction in Texas Over the Plaintiff's Claims ......... 29

5.   The Plaintiff Neglected to Conduct Discovery ........... 29

6.   Equitable Tolling of Limitations is Unnecessary
and  Improper in This Case .......................... 31

CONCLUSION ................................................. 32

CERTIFICATE OF SERVICE ....................................... 34

CERTIFICATE OF COMPLIANCE ................................... 35

# TABLE OF AUTHORITIES

**Cases**                                                                                                  **Pages**

*Acoustic Systems, Inc. v. Wenger Corp.*,
207 F.3d 287, 289 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Asplundh Tree Expert Co. v. Bates*,
71 F.3d 592, 598 (6th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Associated Metals & Minerals Corp. v. S.S. Geert Howaldt*,
348 F.2d 457 (5th Cir. 1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Aviles v. Kunkle*, 978 F.2d 201, 204-05 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . 26

*Barrett v. Chevron, U.S.A.*,
781 F.2d 1067, 1075 (5th Cir. 1986) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Becker v. Tidewater, Inc.*,
No 01-31420, 2003 WL 21404169, (5th Cir. June 19, 2003) . . . . . . . . . . . . . 19, 20

*Brown v. Arlen Management Corp.*,
663 F.2d 575, 580 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Burnside v. Eastern Airlines, Inc.*,
519 F.2d 1127, 1128 n. 2 (5th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 120 (2001) . . . . . . . . . . . . . . . 17

*Citizens Bank v. Alafabco, Inc.*, 123 S. Ct. 2037, 2040 (2003) . . . . . . . . . . . . . . 16

*Covey v. Arkansas River Co.*,
865 F.2d 660, 662 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Dickson Marine, Inc. v. Panalpina, Inc.*,
179 F.3d 331, 336 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*Fedmet Corp. v. M/V Buyalyk*,
194 F.3d 674, 676 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Great Western Mortgage Corp. v. Peacock*,
110 F.3d 222, 226-27 (3d Cir. 1997), *cert. denied* . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hammack v. Baroid Corp.*,142 F.3d 266 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . 12

*Interfirst Bank Dallas, N.A. v. FDIC*,
808 F.2d 1105 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Latham v. Wells Fargo Bank, N.A.*,
987 F.2d 1199, 1203 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Mar-Len of Louisiana, Inc. v. Parsons-Gilbane*,
773 F.2d 633, 635 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Martinez v. Texas Dept. of Criminal Justice*,
300 F.3d 567, 573-576 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22

*Miller v. Public Storage Management, Inc.*,
121 F.3d 215, 219 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Mink v. AAAA Development L.L.C.*,
190 F.3d 333, 356 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*OPE Int'l LP v. Chet Morrison Contractors, Inc.*,
258 F.3d 443 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
253 F.3d 865, 868 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Patterson v. Dietze, Inc.*,
764 F.2d 1145 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Porter Hayden Co. v. Century Indemnity Co.*,
136 F.3d 380, 382-83 (4th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Rojas v. TK Communications, Inc.*,
87 F.3d 745, 748 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Smith Barney, Inc. v. Critical Health Systems of North Carolina*,
212 F.3d 858, 861 n. 1 (4th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## **Statutes:**

Federal Arbitration Act, 9 U.S.C. § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

9 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

9 U.S.C. § 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## **Rules:**

S.D. Tex. Local Rule 7.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. App. P. 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. App. P. 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11, 13

Fed. R. App. P. 4(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. App. P. 4(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed. R. App. P. 4(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed. R. App. P. 4(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## STATEMENT OF JURISDICTION

As explained more fully below under the first issue in this brief, this Court lacks appellate jurisdiction over this case. The Appellant failed to file a timely appeal. Although the district court entered a separate, one-page, final, appealable order on August 15, 2002 and also entered a separate, one-page order on October 15, 2002 denying reconsideration of that order, the Appellant failed to file any Notice of Appeal within 30 days of either order. Fed. R. App. P. 4. In fact, the Appellant failed to file his Notice of Appeal until February 12, 2003, almost 6 months after the district court entered its August 15, 2002 order staying and administratively closing the case in favor of arbitration.

## STATEMENT OF THE ISSUES

1.  Did the Appellant timely file this appeal where he failed to appeal within 30 days of the district court's final judgment?

2.  Was this case properly stayed in favor of arbitration where the Appellant expressly agreed in a written contract to arbitrate his claims?

3.  Was Willbros West Africa, Inc., a foreign corporation headquartered overseas, properly dismissed for lack of personal jurisdiction where the Plaintiff's claims arose from an injury during work in Nigeria and where the Plaintiff failed to demonstrate minimum contacts with the State of Texas?

1

## STATEMENT OF THE CASE

This case involves a claim for personal injuries sustained by the Plaintiff/Appellant, Fred Freudensprung, in late July 2000, while working on an oil and gas project off the coast of Nigeria. (CR ["Clerk's Record"] Tab 1, pp.7-10). Over a year later, on October 4, 2001, the Plaintiff filed his Original Complaint in the Galveston Division of the United States District Court for the Southern District of Texas. He sought a bench trial in the Galveston Division of Texas even though that Division had absolutely no connection with either the Defendants or the events made the basis of the suit. (CR Tab 1, p. 12; Tab 34, p. 393). The Plaintiff named several Defendants in the suit, including Offshore Technical Services, Inc. and Willbros West Africa, Inc. (CR Tab 1, p. 12). Although the Plaintiff recognized in his Original Complaint that Willbros West Africa is a foreign corporation with Nigerian contacts and does not maintain an agent for service of process in Texas (CR Tab 1, p. 11), the Plaintiff attempted service of process on Willbros West Africa through another company, Willbros USA, Inc., located in Tulsa, Oklahoma. (CR Tab 6, pp. 19-20).

On December 21, 2001, Willbros West Africa filed a Motion to Dismiss under Rule 12(b), arguing that the Court lacked personal jurisdiction over it. (CR Tab 12, p. 41). Willbros West Africa pointed out that it is a Panamanian company with its principal place of business in Panama, and also pointed out that it lacks minimum

2

contacts with Texas. (CR Tab 12, p. 41). In addition, Willbros West Africa moved to dismiss on the basis of insufficiency of service of process since the service of process in Oklahoma was improper. (CR Tab 12, pp. 40-41).

The local rules for the district court specified that the Plaintiff had to file his response to the motion to dismiss within twenty days after the motion was filed. S.D. Tex. Local Rule 7.3. However, during that period, the Plaintiff conducted no formal discovery, neither sought nor scheduled any depositions, and neither sought a continuance nor responded to the motion. Only after the submission period had expired did the Plaintiff respond to the motion, and even then he supported his response almost exclusively with computerized documents relating to a different Defendant, Willbros Group, Inc., that were taken from the internet. (CR Tab 22, pp. 100-324).

On February 20, 2002, almost a month and a half after the Plaintiff's Response to the Motion to Dismiss was due--a period during which the Plaintiff conducted no formal depositions or other discovery--the district court granted Willbros West Africa's motion to dismiss, holding that "personal jurisdiction [was] clearly lacking over Willbros West Africa." (CR Tab 26, p. 343).

On May 1, 2002, Offshore Technical filed a Motion to Stay the Plaintiff's Claims, Pending Arbitration. (CR Tab 30, p. 376). In the motion, Offshore Technical

3

pointed out that the Plaintiff had contractually agreed to submit all his claims to arbitration and asked the court to enforce the parties' agreement. While the motion was pending, the case was transferred from the Galveston Division to the Houston Division of the Southern District of Texas. (CR Tab 34, p. 394).

On August 15, 2002, after having considered extensive briefing and having heard oral argument on the motion to stay, the district court entered a simple one-page order staying the Plaintiff's claims and administratively closing the case so that the parties could proceed to the agreed-upon arbitration. The district court considered the order a final order since the court administratively closed the case and expressly made provision in the order for an appeal to the Fifth Circuit. (CR Tab 51, p. 465). The district court also explicitly noted on its docket sheet that the case was closed and that the parties could appeal to the Court of Appeals. (CR, District Court's Docket Sheets, p. 8). Despite the import of the district court's order, the Plaintiff did not file any appeal within 30 days.

Eleven days after the entry of the August 15, 2002 order, the Plaintiff filed a Motion for Reconsideration, arguing that the stay and closure of the case were improper. (CR Tab 52, p. 476). Offshore Technical then filed a Response to the Motion for Reconsideration, countering the arguments made and asking the court to uphold the referral of the case to arbitration. (CR Tab 53, p. 495). On October 15,

2002, after considering the Motion and Response, the district court entered another simple one-page Order Denying the Plaintiff's Motion for Reconsideration. (CR Tab 54, p. 496). That order was duly noted on the district court''s docket sheets. (CR, District Court's Docket Sheets, p. 8). The Plaintiff again failed to file any notice of appeal of the district court's order.

Thirty-one days later, after the appellate deadline had run, the Plaintiff filed what was in effect a revisiting of the court's earlier orders, though titled a Motion for Entry of Judgment or, Alternatively, a Motion for Clarification. (CR Tab 55, p. 505). As before, Offshore Technical filed a Response, objecting to any need for an entry of judgment or for any clarification. (CR Tab 56, p. 524). On January 13, 2003, the district court entered yet another one-page Order Denying Plaintiff's Motion for Entry of Judgment and Motion for Clarification.

Finally, on February 12, 2003, almost 6 months to the day since the district court's final order, the Plaintiff filed his Notice of Appeal to this Court. (CR Tab 58, 527).

## STATEMENT OF THE FACTS

The Plaintiff/Appellant, Fred Freudensprung, is a pipefitter by trade. (CR Tab 53, pp. 477-79, 484-85; CR Tab 40, p. 427; RE ["Appellee's Record Excerpts"] Tabs 1 and 2). Since 1992, he has worked almost exclusively as a pipefitter or pipefitter

foreman for a number of separate companies. (CR Tab 53, pp. 477-79, 484-85; RE Tabs 1, 2). And in keeping with his background, he has worked almost exclusively onshore in a number of chemical plants and offshore on fixed platforms. (CR Tab 40, p. 427; RE Tab 1).

Offshore Technical Services, Inc. is a corporation that supplies certain experienced personnel, or consultants, to the offshore hydrocarbon industry to perform work on offshore platforms. (CR Tab 40, p. 428). Offshore Technical does not supply seamen to companies and does not provide crews for vessels. (CR Tab 40, p. 428).

Well before the accident involved in this suit, the Plaintiff sought to become one of the various consultants that Offshore Technical provides to other companies. (CR Tab 40, p.427). To that end, on November 26, 1997, he entered into a Consultant's Agreement with Offshore Technical. (CR Tab 40, pp. 425, 427). The Consultant's Agreement, along with any work order, applied during any period that he worked in connection with Offshore Technical. (CR Tab 40, p. 427).

Under the Consultant's Agreement, the Plaintiff was an independent contractor for Offshore Technical. (CR Tab 40, p. 425). Among other things, he agreed that any dispute would be referred to arbitration under the rules of the American Arbitration Association. (CR Tab 40, p. 424). Recognizing his background as a pipefitter in

land-based chemical plants and on fixed structures offshore, the Plaintiff repeatedly acknowledged, agreed, and stipulated in the Consultant's Agreement that he was not a seaman, never had been, and was not required to perform any duties of a seaman. (CR Tab 40, pp. 421, 424). As a result, the Plaintiff also repeatedly agreed that he would not claim any benefit under the Jones Act. (CR Tab 40, pp. 421, 424).

In May or June 2000, one of the Willbros companies inquired about possible consultants for a job in Nigeria. (CR Tab 40, p. 427). The work to be performed involved platform hook-up jobs, pipeline hook-up jobs, and other craft type work, such as pipefitting and welding. (CR Tab 40, p. 427). The consultants were not being requested to work as seamen on any vessel or to transport any goods. (CR Tab 40, p. 427). They were requested to perform various types of craft work that would be needed at various job locations. (CR Tab 40, p. 427). They were to perform work on large-scale, high-pressure piping used in oil and gas operations on platforms. (*Id.*).

Ultimately, the Plaintiff was selected for the work on the Nigeria project. He was informed of the job, and was to perform the work for Willbros West Africa, Inc., a foreign company with whom Offshore Technical had a contract (CR Tab 56, p. 512). That contract noted that Willbros West Africa's offices were in Panama and that English law was to govern the contract. (CR Tab 56, pp. 511-12). In June 2000,

7

the Plaintiff and Offshore Technical prepared and signed a work order for the job in

Nigeria. (CR Tab 40, p. 420). Under the work order, the Plaintiff was assigned as

a leaderman, a position above journeyman, but below foreman, to perform pipefitting

work or pipefitting supervision. (CR Tab 40, p. 426). The work order also reiterated

the Plaintiff's agreement to arbitrate any claims or disputes between him and Offshore

Technical. (CR Tab 40, p. 420).

In July 2000, less that 2 months after the work order was signed, the Plaintiff

was injured while assisting in the installation of a fixed single-point mooring

platform, a structure anchored to the seafloor and connected by a pipeline to an

onshore facility. (CR Tab 21, p. 94).

## SUMMARY OF THE ARGUMENT

This Court lacks appellate jurisdiction over this case because the Plaintiff failed

to timely file his Notice of Appeal. The district court entered a final, appealable one-

page order on August 15, 2002, which was the judgment from which the appellate

timetable began to run. No separate document titled a "judgment" was required. The

Plaintiff, however, failed to file his notice of appeal within thirty days of that order

or within thirty days of the order denying reconsideration of that order.

Notwithstanding this jurisdictional bar, the district court's actions in staying

the case in favor of arbitration and dismissing Willbros West Africa for lack of

8

personal jurisdiction were proper and should be affirmed. The Plaintiff contractually agreed to arbitrate all of his claims. That agreement is enforceable under the Federal Arbitration Act, which embodies a strong public policy favoring arbitration agreements and the arbitration of disputes. The exclusion in that Act for employment contracts of seamen does not apply to this case, which involves a consultant's agreement for a land-based pipefitter for fixed structures.

Willbros West Africa was properly dismissed for lack of personal jurisdiction because Willbros West Africa is a foreign corporation with its headquarters in Panama and the Plaintiff's claims against it arose out of its alleged activities in Nigeria, and the Plaintiff failed to establish that it was subject to personal jurisdiction in Texas.

## **ARGUMENT**

## **A.     The Plaintiff Did Not Timely File His Appeal**

This Court lacks jurisdiction over this suit because the appeal was not timely filed. As the Appellant, the Plaintiff bears the burden of establishing this Court's appellate jurisdiction over his appeal. *See, e.g.*, *Acoustic Systems, Inc. v. Wenger Corp.*, 207 F.3d 287, 289 (5th Cir. 2000). However, he has failed to establish that he timely filed his appeal.

Federal Rule of Appellate Procedure 3 states that "[a]n appeal permitted by law as of right from a district court to a court of appeals may be taken only by filing a notice of appeal with the district clerk within the time allowed by Rule 4. Rule 4 sets forth the appropriate timeline for the filing of a notice of appeal:

> In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after the judgment **or order** appealed from is entered.

Fed. R. App. P. 4(a)(1)(A) (emphasis added). Thus, as a general rule, with only three very limited exceptions, the appellant must file his notice of appeal within 30 days after the final order is entered. It is well settled that the 30-day period is mandatory and jurisdictional, and an appellant's failure to timely file the notice of appeal prevents the court of appeals from acquiring jurisdiction over the appeal. *See, e.g.*, *Burnside v. Eastern Airlines, Inc.*, 519 F.2d 1127, 1128 n. 2 (5th Cir. 1975).

In the present case, as the Plaintiff admits in his brief, the district court entered a one-page final, appealable order on August 15, 2002. (Appellant's Brief, pp. 1, 4, 8, 28). However, the Plaintiff did not file a notice of appeal within 30 days of that order. In fact, as the Plaintiff acknowledges, he did not file his notice of appeal until February 12, 2003, almost 6 months to the day, after the district court entered its final, appealable order.

Nor do the three limited exceptions mentioned above avail the Plaintiff anything. Federal Rule of Appellate Procedure 4(a)(1)(B) applies only when the United States or its officer or agency is a party. Since that is not the case here, that Rule is inapplicable. Likewise Rule 4(c) does not apply because that Rule applies only to an inmate confined in an institution, and no such situation is involved in this case. Although Rule 4(a)(4) provides a mechanism for extending the appellate timetable, the Plaintiff still failed to comply with that Rule. The Plaintiff recognizes as much since he makes no mention of, or argument with respect to, Rule 4(a)(4) in his brief.

Under Rule 4(a)(4), if an appellant timely files certain motions with the district court, the 30-day time limit to file an appeal runs from the entry of the order disposing of the motion. However, each of the various motions mentioned must be made within 10 days of the final judgment or order. In the present case, the Plaintiff did not make any of the denominated motions within 10 days of the August 15, 2002 final order. He filed his Motion for Reconsideration 11 days after the entry of that order. But even if he did timely file the Motion for Reconsideration, the district court unequivocally denied that motion in a one-page order entered on October 15, 2002. And the Plaintiff neither made any of the motions of Rule 4(a)(4) within 10 days of that order, nor filed any notice of appeal within 30 days of that order.  Nor did the

11

Plaintiff's post-decision motion for entry of judgment or motion for clarification, which was filed well over 10 days after the October 15, 2002 order, affect the untimeliness of the Plaintiff's notice of appeal. *See*, *e.g.*, *Latham v. Wells Fargo Bank, N.A.*, 987 F.2d 1199, 1203 (5th Cir. 1993) (holding that a late post-decision motion may not be used as a substitute for a timely appeal). Instead, the Plaintiff waited almost four months to file his notice of appeal to this Court.

In his Appellant's Brief, the Plaintiff argues that although there was a separate, final, one-page appealable order entered on August 15, 2002, a separate document denominated a "judgment" was required to be entered before any notice of appeal had to be made. This is the only real argument that the Plaintiff makes. Although the Plaintiff relies on Fed. R. App. P. 4 to support this contention, the language of that Rule actually contradicts his argument. As highlighted in the above quotation from Rule 4, the Rule not only refers to an appeal of a "judgment," but also repeatedly refers to an appeal from an "order."

The one case the Plaintiff cites for this argument, however, is inapplicable to the facts of this case. In *Hammack v. Baroid Corp.*, 142 F.3d 266 (5th Cir. 1998), Joe and Ann Hammack sued Baroid for payment of Ann Hammack's hospital bills. After a bench trial, the district court submitted factual findings and conclusions of law in a 7-page order. *Id.* at 268. Importantly, on the last page of that order, the court stated:

"FINAL JUDGMENT should issue. It is so ORDERED." *Id.* Thus, the order itself indicated that it was not the final judgment, but that a separate judgment would follow. When no separate final judgment was forthcoming, the Hammacks returned to the court and requested entry of the judgment. The court granted the motion and entered a single-page, separate document reflecting the final judgment, and the Hammack's then appealed. On appeal, one of the questions raised was whether the Hammacks had waived their right to appeal by waiting several months after the order, to seek the entry of the separate document final judgment. Faced with the language of the district court's order, the Court of Appeals was unwilling to find a waiver under the circumstances.

Such a case has no relevance to the facts of the present suit. In this suit, there was no multiple-page order reciting lengthy factual and legal conclusions, and there was no indication that a separate judgment would be issued. Rather, the district court entered a separate, simple one-page order explicitly stating that the case was administratively closed and authorizing an immediate appeal to the Court of Appeals. (CR Tab 51, p. 465). Moreover, the district court's computerized docket sheets clearly reflect that the district court's order was a final, appealable judgment. Those sheets contain entries showing that the case was closed on August 15, 2002 and that the parties could appeal the district court's order to the Court of Appeals. (CR, District Court's Docket Sheets, p. 8).

Cases from the Fifth Circuit and from other federal courts of appeals have held that the time for taking an appeal runs from the entry of such an order and that no separate document titled a "judgment" is required. *See, e.g.*, *Interfirst Bank Dallas, N.A. v. FDIC*, 808 F.2d 1105 (5th Cir. 1987). In *Interfirst*, the Court explained that the "separate document provision should not be used to obviate a party's failure to file a timely notice of appeal in accordance with Rule 4." 808 F.2d at 1108. It also recognized that "Rule 58 . . . should not be used to give a party the opportunity to cure a procedural error in observing an appellate deadline." *Id.*

Under these circumstances, the Plaintiff failed to timely file his appeal, and this Court should dismiss this appeal for lack of jurisdiction.

**B.___The District Court Properly Stayed the Case In Favor of Contractually Agreed-Upon Arbitration**

In November 1997, the Plaintiff entered into a Consultant's Agreement with Offshore Technical. Under that agreement, he agreed to act as a consultant and independent contractor for Offshore Technical and to provide certain technical skills and services. In the agreement, he expressly agreed that any disputes would be resolved by arbitration:

> 5.    ARBITRATION
>
> If any dispute or difference of any kind whatsoever shall arise between the parties hereto in connection with this

14

> Agreement, which cannot be resolved by discussion and agreement, the same shall be referred to for the final decision of a single Arbitrator to be mutually agreed between the parties. Arbitration shall take place in Houston, Texas and be conducted in the English language according to the Rules of the American Arbitration Association. . . .

(CR Tab 40, p. 424). In spite of his clear agreement to arbitrate, the Plaintiff refuses to comply and argues that the district court erred in compelling the parties to proceed to arbitrate.

Federal law has declared a strong public policy favoring the arbitration of disputes and the enforcement of arbitration provisions. With the enactment of the Federal Arbitration Act ("FAA"), Congress expressly mandated the enforcement of arbitration provisions such as the one in this case:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The Act expressly authorizes district courts to stay any civil proceeding so that the arbitration can be undertaken. 9 U.S.C. § 3. The federal courts both recognize and enforce this strong federal preference for arbitration. *Fedmet Corp. v.*

*M/V Buyalyk*, 194 F.3d 674, 676 (5th Cir. 1999). And they broadly construe the reach

of the FAA. *See Citizens Bank v. Alafabco, Inc.*, 123 S.Ct. 2037, 2040 (2003). In

fact, the federal preference is so great that "any doubts as to the availability of

arbitration must be resolved in favor of arbitration." *Fedmet Corp.*, 194 F.3d at 676.

The Plaintiff attempts to avoid his arbitration agreement by relying on an

exception to Section 1 of the Federal Arbitration Act. The Plaintiff argues that the

FAA does not apply to seamen's employment contracts and that his Consultant's

Agreement falls within the exception. However, his reliance on that exception is

misplaced, since that exception simply has no application to him. First, the exception

in Section 1 is merely an exception to the definition of the term "maritime

transactions" under the FAA. Yet the Consultant's Agreement between Offshore

Technical and the Plaintiff was not a maritime transaction. Offshore Technical is a

corporation that supplies certain experienced consultants to the hydrocarbon industry.

(CR Tab 40, p. 428; RE Tab 1). The Consultant's Agreement was the agreement

under which the Plaintiff became one of those personnel. That agreement had

nothing to do with any maritime transaction. (*Id.*). Second, the exception in Section

1 of the Federal Arbitration Act applies only to seamen's employment contracts, and

the Plaintiff's Consultant's Agreement with Offshore Technical was not a seaman's

employment contract. The Plaintiff entered into the Consultant's Agreement with

Offshore Technical to provide technical expertise such as pipefitting and pipefitting supervision for other companies. (CR Tab 40, p. 427; RE Tab 1). Under the Consultant's Agreement, the Plaintiff was not an employee of Offshore Technical at all. He was a consultant and independent contractor. (CR Tab 40, pp. 422, 424, 425), and Offshore Technical did not pay his income, withholding, or social security taxes. (CR Tab 40, p. 422). He was working for a Willbros company and was under the "direct and exclusive control of companies or personnel other than Offshore Technical and its personnel." (CR Tab 40, p. 426). Third, case law has repeatedly recognized that the exception in Section 1 of the FAA is narrowly construed, does not apply to all employment contracts, and applies only to workers who are actually engaged in the transportation of goods in commerce. *See*, *e.g.*, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 120 (2001); *Miller v. Public Storage Management, Inc.*, 121 F.3d 215, 219 (5th Cir. 1997); *Rojas v. TK Communications, Inc.*, 87 F.3d 745, 748 (5th Cir. 1996); *Great Western Mortgage Corp. v. Peacock*, 110 F.3d 222, 226-27 (3d Cir. 1997), *cert. denied*, 522 U.S. 915 (1997); *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592, 598 (6th Cir. 1995) (holding that the exclusion applies only to "workers who are actually engaged in the movement of interstate or foreign commerce"). The undisputed evidence, including the Plaintiff's own Affidavit in the record, demonstrates that the Plaintiff was not engaged in the

17

transportation of goods in commerce (CR Tab 52, p. 468). The exception in Section 1 was meant to apply to traditional seamen moving goods between ports. The Plaintiff was not the type of worker, certainly not the type of seaman, to whom the exclusion was even meant to apply.

Fourth, the Plaintiff was not a seaman. Offshore Technical does not provide seamen to other companies, does not furnish crews for vessels, and did not furnish any vessel or crew for the project in Nigeria on which the Plaintiff was injured. (CR Tab 40, pp. 426-28; RE Tab 1). Offshore Technical provides skilled offshore personnel to perform work on offshore platforms for the hydrocarbons industry. (*Id.*). The Plaintiff was a craft building tradesman with a background working as a pipefitter supervisor in onshore chemical plants and on offshore platforms. (CR Tab 40, p. 427; Tab 53, pp. 477-79, 484-85; RE Tabs 1, 2).

A Willbros company requested Offshore Technical to provide the Plaintiff to work in Nigeria on platform hook-up jobs, pipeline hook-up jobs, and other craft building trades work. (CR Tab 40, p. 427; RE Tab 1). He was not requested to work as a seaman aboard any vessel or fleet of vessels. (*Id.*). He was not requested for the purpose of manning any vessel or fleet of vessels, for the purpose of being permanently assigned to a vessel or a fleet of vessels, or for the purpose of performing substantially all of his work on a vessel or fleet of vessels. (*Id.*). He was

18

requested for the purpose of performing craft labor (such as pipefitting or the supervision of pipefitters) at various job locations, and that labor would be performed on large-scale, high-pressure pipe used in oil and gas operations on platforms and not associated with a vessel. (*Id.*). Moreover, the Plaintiff was classified as a leaderman, an intermediate position for pipefitting and pipefitting supervision (CR Tab 40, pp. 420, 426), and the job was only slated to last between 6 weeks and 3 months (CR Tab 40, p. 420). The Fifth Circuit has repeatedly held that workers like the Plaintiff, who are generally nonmaritime land-based workers only temporarily working aboard a vessel, are not seamen as a matter of law. *See, e.g., Becker v. Tidewater, Inc.*, No. 01-31420, 2003 WL 21404169 (5th Cir. June 19, 2003); *Barrett v. Chevron, U.S.A.*, 781 F.2d 1067, 1075 (5th Cir. 1986) (en banc).

Another reason the Plaintiff's "seaman" argument is not well founded is that the Plaintiff himself has expressly acknowledged, agreed and stipulated that he is not a seaman and that he has no right to assert claims as a seaman. In two separate provisions of the Consultant's Agreement, the Plaintiff has stipulated that he is not a seaman and has no right to assert any claims in that capacity. One provision states as follows: "CONSULTANT [the Plaintiff] specifically recognizes and agrees that he/she is not a Seaman, never has been and is not required in any way to perform any duties of a Seaman and, as such, cannot and will not claim any benefit under the

Jones Act." (CR Tab 40, p. 424). Another provision later in the agreement repeats the same statement: "CONSULTANT specifically agrees that he/she is not a Seaman and will not in any way benefit from the Jones Act." (CR Tab 40, p. 421). Thus, in conformity with the nature of his work and his work history, the Plaintiff expressly acknowledged and agreed that he was not a seaman, and therefore, the Federal Arbitration Act does apply to enforce the Plaintiff's agreement to arbitrate. In response to these repeated, unequivocal admissions, the Plaintiff now argues that he cannot waive his rights under the Jones Act. However, Offshore Technical is arguing not that the Plaintiff is a seaman waiving his rights, but that he is not a seaman and that he merely confirmed that in his Consultant's Agreement.

As a person claiming benefits under the Jones Act, the Plaintiff has the burden of establishing seaman status. *See Becker v. Tidewater, Inc.*, No. 01-31420, 2003 WL 21404169 (5th Cir. June 19, 2003). He has not met that burden, and the Federal Arbitration Act **does** apply to him and compels the enforcement of the arbitration provision in the Consultant's Agreement.

The Plaintiff also attempts to avoid his arbitration agreement by now arguing that he did not agree to arbitrate tort claims. As a preliminary matter, Offshore Technical would point out that the Plaintiff never raised this argument below before the district judge, and therefore he has waived that argument on appeal. *See*, *e.g.*,

*Martinez v. Texas Dept. of Criminal Justice*, 300 F.3d 567, 573-576 (5th Cir. 2002).

But, in any case, the argument is also incorrect.

The Plaintiff appears to argue that the arbitration provision in the Consultant's

Agreement conflicts with the Work Order No. 4 that described the nature of the job

for Willbros West Africa. But that is not true. The Work Order merely reiterated that

any disputes "of any nature" were subject to arbitration. (CR Tab 40, p. 420). It

merely reiterated, in a single sentence, the arbitration agreement contained in the

Consultant's Agreement. Although the Work Order mentioned the word

"contractual" to modify the word "disagreements," it did not expressly use the word

"contractual" to modify the other types of "claims and disputes of any nature" that

were covered by the arbitration agreement.

Even if there were a conflict as the Plaintiff argues, the conflict would not be

resolved in the manner the Plaintiff claims. The Consultant's Agreement provides

that any conflicting terms are excluded, so that if the Work Order attempted to restrict

arbitration to contractual disputes, the term "contractual" would be excluded from the

arbitration agreement. Moreover, this Court, implementing the strong federal policy

of enforcing arbitration agreements, has held that "a presumption of arbitrability

exists requiring that whenever the scope of an arbitration clause is fairly debatable or

reasonably in doubt, the court should decide the question of construction in favor of

arbitration." *Mar-Len of Louisiana, Inc. v. Parsons-Gilbane*, 773 F.2d 633, 635 (5th Cir. 1985).

In his brief, the Plaintiff further argues that the arbitration provision in the Consultant's Agreement is governed solely by Texas law and not by the Federal Arbitration Act.   Again, this argument was not raised by the Plaintiff below before the district judge, and consequently it has been waived on appeal.   *See Martinez v. Texas Dept. of Criminal Justice*, 300 F.3d 567, 573-75 (5th Cir. 2002).   In fact, before the district judge, the Plaintiff only addressed the application of federal law. Nevertheless, the Plaintiff's argument that Texas law solely governs is without merit,

The Plaintiff argues that the FAA does not apply because the Consultant's Agreement contains a general choice of law provision stating that Texas law governs the construction and performance of the Agreement.    The Plaintiff therefore concludes that Texas law applies to the arbitration provision and invalidates it.  This conclusion, however, is in error.   A number of cases have held that a general contractual provision choosing the law of a state to govern the contract cannot be used to invalidate a separate arbitration provision.  *See Smith Barney, Inc. v. Critical Health Systems of North Carolina, Inc.*, 212 F.3d 858, 861 n.1 (4th Cir. 2000); *Porter Hayden Co. v. Century Indemnity Co.*, 136 F.3d 380, 382-83 (4th Cir. 1998); *OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443 (5th Cir. 2001).

22

These cases recognize that the FAA preempts the application of state laws that would thwart the overarching policy in favor of arbitration.

In view of the foregoing, the Plaintiff's agreement to submit his claims to arbitration is favored and enforceable under the FAA. The district court properly stayed the case to allow the parties to arbitrate the dispute.

## C.    Willbros West Africa Was Properly Dismissed for Lack of Personal Jurisdiction

When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the party who seeks to invoke the jurisdiction of the federal court bears the burden of establishing the district court's jurisdiction over the nonresident defendant. *See*, *e.g.*, *Mink v. AAAA Development L.L.C.*, 190 F.3d 333, 356 (5th Cir. 1999). In the present case, Willbros West Africa is a nonresident defendant that was not subject to personal jurisdiction. When it moved to dismiss for lack of personal jurisdiction, the Plaintiff failed to present relevant facts demonstrating that Willbros West Africa was amenable to the district court's jurisdiction.

While a plaintiff's uncontroverted and nonconclusory allegations may support a claim of jurisdiction, the plaintiff still bears the burden of establishing the requisite facts to support personal jurisdiction. *See*, *e.g.*, *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001). In the present case, the Plaintiff

did not make any uncontroverted or nonconclusory allegations that supported the retention of jurisdiction. In his Original Complaint, the Plaintiff recognized that Willbros West Africa is a foreign corporation that does not maintain an agent for service of process in Texas. (CR Tab 1, p. 11). The Plaintiff merely alleged that Willbros West Africa was a wholly owned subsidiary of Willbros USA, Inc., a separate corporation that had its principal place of business in Tulsa, Oklahoma. (CR Tab 1, p. 11). The Plaintiff also made the conclusory statement that "the Defendants have the requisite minimum contacts with the forum so as not to offend traditional notions of fair play and substantial justice." (CR Tab 1, p. 10). Those were the sum total of the jurisdictional allegations against Willbros West Africa. However, in its Motion to Dismiss, Willbros West Africa expressly controverted those allegations. Willbros West Africa pointed out that it was in fact a Panamanian company with its principal place of business in Panama and that it is a wholly owned subsidiary of Willbros International, Inc., another Panamanian company. (CR Tab 12, p. 41). Willbros West Africa also expressly denied that it had minimum contacts with the forum. (CR Tab 12, p. 41).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which the individual has established no meaningful 'contacts, ties, or relations.'" *Dickson Marine, Inc. v. Panalpina, Inc.*,

24

179 F.3d 331, 336 (5th Cir. 1999).  The Plaintiff has failed to bring forth sufficient facts to demonstrate that Willbros West Africa has the requisite alleged minimum contacts with the forum state. After Willbros West Africa filed its Motion to Dismiss, the Plaintiff neither noticed nor scheduled any depositions of Willbros West Africa personnel or the personnel of anyone else. Nor did the Plaintiff attempt to engage in any formal discovery for its Response to the Motion to Dismiss. Instead, the Plaintiff supported his Response with two attachments: (1) a copy of voluminous pages taken from various sites on the Internet and relating to a separate corporation, Willbros Goup, Inc., not to the corporation Willbros West Africa, Inc.; and (2) a copy of an Offshore Personnel Supply Agreement between Willbros West Africa, Inc. and Offshore Technical Services, Inc. These documents do not present sufficient facts to establish that Willbros West Africa had the requisite minimum contacts with Texas.

## 1. The Plaintiff Has Failed to Show Specific Jurisdiction Over Willbros West Africa

To establish specific jurisdiction over a nonresident defendant, a plaintiff must establish that the suit arises out of the defendant's contacts with the forum. *See*, *e.g.*, *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999).  In the present case, however, the Plaintiff has failed to establish that his claims against Willbros West Africa arose out of any activities in Texas.  And he has failed to cite

any case law supporting specific jurisdiction against Willbros West Africa under the facts of this case. In fact, as is abundantly clear from the allegations in the Complaint, the Plaintiff's claims entirely arise out of and relate to Willbros West Africa's oil and gas activities and operations off the coast of Nigeria. His claims arise out of and relate to his injuries sustained in the installation of the fixed, single-point mooring system in Nigeria (CR Tab 1, pp. 7-10), and have nothing whatsoever to do with Texas or any activities of Willbros West Africa in Texas. A number of decisions from this Court have refused to find specific jurisdiction facts where the facts were even more substantial than those in the present case. *See*, *e.g.*, *Aviles v. Kunkle*, 978 F.2d 201, 204-05 (5th Cir. 1992); *Patterson v. Dietze, Inc.*, 764 F.2d 1145 (5th Cir. 1985).

**2.    The Plaintiff Has Failed to Show General Jurisdiction Over Willbros West Africa**

Lacking specific jurisdiction over Willbros West Africa, the Plaintiff attempts to fashion some type of connection with Texas to support general jurisdiction. However, in the attempt, he plays fast and loose with the meager materials at his disposal. For instance, the Plaintiff seemingly implies that Willbros West Africa is administered in Houston and leases offices in Houston. However, an examination of the cited materials in the record does not support these statements. The materials the Plaintiff relies on are copies of Willbros Group, Inc.'s Form 10-K and copies of other

26

internet-derived papers concerning Willbros Group, Inc., not Willbros West Africa. The Form 10-K states that Willbros Group, Inc. is a corporation incorporated in the Republic of Panama. (CR Tab 22, p. 296). It also states that certain undefined, indeterminate "administrative services" are provided to Willbros Group, Inc. at an address in Houston. (*Id.*). The Plaintiff argues that because the 10-K defines the term "Company" at one place as "Willbros Group, Inc. and all of its majority-owned subsidiaries," the use of the word "Company" everywhere else in the document must be taken with mathematical precision to refer to all the individual subsidiaries separately. However, this interpretation places an undue strain on the very nature of a Form 10-K, a securities filing which is not held to such mathematically exacting standards. In fact, there are numerous places in the 10-K where the use of the word "Company" cannot logically refer to Willbros Group, Inc. and each of its majority-owned subsidiaries. (CR Tab 22, p. 278) (referring to the Company's ownership of property). Even if the document could be read so strictly, the Plaintiff does not demonstrate that Willbros West Africa, Inc. is defined in the 10-K as one of the majority-owned subsidiaries of Willbros Group, Inc. Instead, the Plaintiff relies on an entirely separate document, taken from a separate internet site, to show only that Willbros West Africa entities located in the Ivory Coast and in Nigeria are "operating subsidiaries" of some other unknown company. (CR Tab 22, p. 231). The Plaintiff presents no evidence that the entities listed as operating subsidiaries qualify as

27

"majority-owned subsidiaries" as that term is used in the Form 10-K. In sum, the Plaintiff has failed to provide any coherent evidence at all relating to any contacts of Willbros West Africa with Texas. The Plaintiff has failed to present any evidence that Willbros West Africa has continuous and systematic contacts with the State of Texas.

**3.     Willbros West Africa Never Made A General Appearance and Never Waived Personal Jurisdiction**

In his brief, the Plaintiff makes the argument that Willbros West Africa made a general appearance and waived any objection to personal jurisdiction by allegedly requesting a stay pending arbitration. However, this argument, which appropriately occupies only a paragraph in the Appellant's Brief, is preposterous. Willbros West Africa never made any general appearance in this case. Up to the time its motion to dismiss for lack of personal jurisdiction was granted, Willbros continuously contested the district court's authority to exercise personal jurisdiction over it. For instance, Willbros West Africa first expressly moved for dismissal under Rule 12(b) for lack of personal jurisdiction. (CR Tab 12, p. 41). It next filed an answer expressly made subject to its Rule 12(b) motion. (CR Tab 13, p. 45). Then in the Joint Report of the Rule 26(f) Conference and Joint Discovery/Case Management Plan- -the very document the Plaintiff cites as support for a waiver--Willbros West Africa repeatedly stated that it was contesting personal jurisdiction. (CR Tab 17, pp. 59, 63, 64). It is

difficult to conceive how these circumstances indicate a general appearance or waiver of the right to contest personal jurisdiction.  Moreover, even the language the Plaintiff cites in the Joint Discovery Plan does not say what the Plaintiff claims it says. Neither Willbros West Africa, Inc. nor the other Willbros Defendants actually affirmatively requested relief in the Joint Discovery Plan.  (CR Tab 17, p. 63).  In fact, Willbros West Africa was not even specifically mentioned.  Rather, the other Willbros Defendants merely indicated their belief that discovery might need to be stayed.

**4.     Willbros West Africa Never Consented to Jurisdiction in Texas Over the Plaintiff's Claims**

The Plaintiff also argues that Willbros West Africa impliedly consented to a Texas forum because its contract with Offshore Technical contained a provision for arbitration in Houston.  However, the Plaintiff's argument is flawed.  The Plaintiff, as the proponent of jurisdiction, has the burden of establishing this argument.  Yet, the Plaintiff has not carried that burden.  The case law he cites does not support his argument under the facts of this case.  The one cited case, *PaineWebber*, did not even hold that an arbitration clause conferred personal jurisdiction over the nonresident defendant.  In fact, it held just the opposite.  And the Plaintiff has not demonstrated how Willbros West Africa's arbitration provision with Offshore Technical somehow

subjects Willbros West Africa to jurisdiction with respect to the claims of the Plaintiff, a third party.

## 5.   The Plaintiff Neglected to Conduct Discovery

The Plaintiff further argues that he did not have an opportunity for discovery prior to the dismissal.  He argues that in his Response to the Motion to Dismiss, he requested additional time to conduct discovery and that the district court erred in not granting his request.

Although the Plaintiff neglects to mention the standard of review for such an error, the standard is whether the district judge abused his discretion.  *See Brown v. Arlen Management Corp.*, 663 F.2d 575, 580 (5th Cir. 1981).  The circumstances of this case demonstrate that the district court did not abuse its discretion in any denial of additional discovery.

First, the Plaintiff did not even make a valid request.  In its Response to the Motion to Dismiss, the Plaintiff "expressly denie[d] the necessity of [additional time in which to conduct discovery]."  (CR Tab 22, p. 311).  Second, if anything, the district court actually granted the Plaintiff's request.  After the Plaintiff's Response was filed, the district court refrained from any ruling for almost 6 weeks.  However, during that time, the Plaintiff did not attempt to conduct any formal discovery with respect to Willbros West Africa.  Third, the Plaintiff had sufficient time to conduct

discovery, but simply elected not do so.  The Plaintiff filed suit against several

Defendants, including Willbros West Africa on October 4, 2001.  (CR Tab 1, p. 12).

Two of the Willbros Defendants, Willbros USA, Inc. and Willbros Engineers, Inc.,

filed their original answers on November 13, 2001.  (CR Tab 9, p. 29; Tab 10, p. 33).

Willbros West Africa filed both its motion to dismiss under Rule 12(b) and its answer

subject to that motion on December 21, 2002.  (CR Tab 12, p. 41; Tab 13, p. 45).  On

January 11, 2002, the Plaintiff filed a late Response to the Motion to Dismiss, citing

no formal discovery.  (CR Tab 22, p. 324).  Almost a month and a half later, on

February 20, 2002, the district court granted Willbros West Africa's motion to

dismiss without prejudice for lack of personal jurisdiction.  (CR Tab 26, p. 345).  At

no time, before the court's dismissal order, did the Plaintiff seek, schedule, or take

any depositions with respect to Willbros West Africa.  Nor did the Plaintiff conduct

any other formal discovery as to Willbros West Africa.  In fact, the Plaintiff supported

his late-filed Response to the Motion to Dismiss, with only (1) a copy of the contract

between Willbros West Africa and Offshore Technical and (2) various materials

printed off the Internet.  Under these circumstances, the Plaintiff has not established

that he "diligently labored to provide evidence" as he claims.  Nor did he exercise any

diligence after Willbros West Africa was dismissed without prejudice.  Again, he

conducted no depositions or formal hearing as to Willbros West Africa after the

dismissal. Consequently, the district court did not abuse its discretion in declining to give the Plaintiff yet additional time to develop his case. *See*, *e.g.*, *Associated Metals & Minerals Corp. v. S.S. Geert Howaldt*, 348 F.2d 457 (5th Cir. 1965).

**6.     Equitable Tolling of Limitations is Unnecessary and Improper in This Case**

Finally, the Plaintiff argues that if this Court affirms the district court's dismissal of Willbros West Africa for lack of personal jurisdiction, this Court should equitably toll the running of the statute of limitations as to Willbros West Africa. However, no equitable tolling should lie under the circumstances of this case. As already discussed above, the Plaintiff neglected to conduct any formal discovery on Willbros West Africa before the district court dismissed the claims for lack of personal jurisdiction. Even after the order of dismissal--which was without prejudice and which specified that the Plaintiff was free "to reassert these claims in a court of proper jurisdiction and venue, during the applicable limitations period" (CR Tab 26, p. 335)--the Plaintiff never conducted any depositions or utilized formal discovery procedures as to Willbros West Africa. Furthermore, the Plaintiff has never filed any other lawsuit against Willbros West Africa, within the appropriate limitations period, even though he has had the opportunity to do so ever since the Plaintiff's accident. Under such circumstances, where the Plaintiff's request for relief is based on his own

lack of diligence, equity does not support a tolling of the statute of limitations.  *See*, *e.g.*, *Covey v. Arkansas River Co.*, 865 F.2d 660, 662 (5th Cir. 1989).

## III.

## <u>CONCLUSION</u>

On August 15, 2002, the district court entered a one-page final, appealable judgment closing this case in favor of arbitration.  Despite this judgment, the Plaintiff failed to timely file his appeal.  He failed to file his notice of appeal within 30 days of that judgment, and in fact failed to file his notice of appeal until mid-February 2003, approximately 6 months after the court's judgment.  Thus, this Court lacks jurisdiction over this appeal.

Yet, in any case, the district court properly closed the case in favor of arbitration and properly dismissed Willbros West Africa for lack of personal jurisdiction.  The Plaintiff contractually agreed to arbitrate his claims, and public policy strongly favors the arbitration of disputes.  Moreover, the Plaintiff failed to carry his burden of establishing personal jurisdiction over Willbros West Africa, a foreign corporation headquartered abroad, for an alleged tort in Nigeria.

Under these circumstances, the Appellee Offshore Technical Services, Inc. requests that this Court dismiss the Plaintiff's appeal for lack of appellate jurisdiction and allow the parties to proceed with arbitration.  In the alternative, Offshore

33

Technical requests that this Court affirm the district court's order staying this case in favor of arbitration, and affirm the district court's order dismissing Willbros West Africa, Inc. for lack of personal jurisdiction.

Respectfully submitted,

_____

Kenneth G. Engerrand
State Bar No. 06615900
Michael A. Varner
State Bar No. 20499425
1177 West Loop South, Tenth Floor
Houston, Texas 77027-9007
(713) 629-1580
(713) 629-5027 (fax)
ATTORNEYS FOR THE APPELLEE
OFFSHORE TECHNICAL SERVICES, INC.

OF COUNSEL:

BROWN SIMS, P.C.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 1, 2003, I served a paper copy of the Appellee's Brief and also a copy on a 3.5 inch diskette, by certified mail, return receipt requested, on the Clerk of the Fifth Circuit and on the following counsel of record:

Cliff Gordon
Huseman & Pletcher
600 Leopard, Suite 2100
Corpus Christi, Texas 78473

R. Blake Brunkenhoefer
Brunkenhoefer & Hall, P.C.
1770 Tower II
555 N. Carancahua
Corpus Christi, Texas 78478

Michael D. Murphy
Hays, McConn, Rice & Pickering, P.C.
400 Two Allen Center
1200 Smith Street
Houston, Texas 77002

_____
Michael A. Varner

### <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

1.    This Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this Brief contains 9499 words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared in a proportionally spaced typeface using Corel WordPerfect 2000 in font size 14, Times New Roman.

3.    THE UNDERSIGNED UNDERSTANDS A MATERIAL MISREPRESENTATION IN COMPLETING THIS CERTIFICATE, OR CIRCUMVENTION OF THE TYPE-VOLUME LIMITS IN FED. R. APP. P. 32(a)(7), MAY RESULT IN THE COURT'S STRIKING THE BRIEF AND IMPOSING SANCTIONS AGAINST THE PERSON SIGNING THE BRIEF.

_____
Michael A. Varner, Attorney for Appellee Offshore Technical Services, Inc.

Dated:   August 1, 2003

35