NO. 03-20226

_____

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

**FRED FREUDENSPRUNG**,

APPELLANT

VS.

**OFFSHORE TECHNICAL SERVICES, INC., et al.**,

APPELLEES

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

_____

**APPELLANT'S BRIEF**

_____

CLIFF GORDON
FED ID #19259
TX BAR #00793838
HUSEMAN & PLETCHER
600 LEOPARD, SUITE 2100
CORPUS CHRISTI, TX 78473
TEL:   361/883-3563
FAX:  361/883-0210

ATTORNEYS FOR APPELLANT

# CERTIFICATE OF INTERESTED PARTIES

No. 03-20226, Fred Freudensprung v. Offshore Technical Services, Inc., et al.

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of the case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Fred Freudensprung, Plaintiff-Appellant and his counsel:
    R. Blake Brunkenhoefer, Brunkenhoefer & Associates
    Russell G. Burwell, Burwell, Burwell, & Nebout
    Cliff Gordon, Huseman & Pletcher

Offshore Technical Services, Inc., Defendant-Appellee and its counsel:
    Michael A. Varner, Kenneth G. Engerrand, Brown Sims

Willbros USA, Inc., Willbros Engineers, Ins., Willbros Group, Inc., Willbros West Africa, Inc., and Willbros International, Defendants-Appellees, and their counsel:
    Michael D. Murphy, Hays, McConn, Rice & Pickering

_____
Cliff Gordon
Attorney of record for Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Appellant believes oral argument would aid the decisional process because this appeal raises complex issues involving the interrelationship between the Federal Arbitration Act and Texas General Arbitration Act as well as between laws governing seaman and arbitration. This appeal also involves the amendments to FED. R. APP. P. 4 which became effective December 2, 2002, and how they might apply to orders entered before its effective date.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES ........................................................ ii

STATEMENT REGARDING ORAL ARGUMENT ............................................ iii

TABLE OF CONTENTS ........................................................................................ iv

TABLE OF AUTHORITIES .................................................................................. vii

JURISDICTIONAL STATEMENT ........................................................................1

ISSUES PRESENTED ...........................................................................................3

    ISSUE ONE: Whether the district court erred in compelling
    Freudensprung to arbitrate his claims against OTSI ..........................................3

        Issue 1a.  Whether the Federal Arbitration Act ('FAA') or the Texas
        General Arbitration Act ('TGAA') governs .................................................3

        Issue 1b.  If the TGAA controls, whether a claimant may be
        compelled to arbitrate personal injury claims ..............................................3

        Issue 1c.  If the FAA controls, whether a seaman may be compelled
        to arbitrate by including a waiver of seaman status in the seaman's
        employment contract ......................................................................................3

    ISSUE TWO:  Whether the district court erred in dismissing Willbros
    West Africa for lack of personal jurisdiction ......................................................3

    ISSUE THREE:  Whether Freudensprung timely filed his notice of
    appeal ...................................................................................................................3

STATEMENT OF THE CASE .................................................................................3

STATEMENT OF FACTS .......................................................................................5

SUMMARY OF THE ARGUMENT ......................................................................7

ARGUMENT ...........................................................................................................9

    ISSUE ONE: The district court erred in compelling Freudensprung to
    arbitrate his claims against OTSI .........................................................................9

        Standard of review .........................................................................................9

        Issue 1a. The Texas General Arbitration Act governs the arbitration
        agreement between Freudensprung and OTSI ..............................................9

Issue 1b. Under the TGAA, the district court erred in compelling
Freudensprung to arbitrate his personal injury claims ............................... 10

    Freudensprung did not agree to arbitrate tort claims ........................... 10

    The TGAA does not require arbitration of personal injury claims ...... 12

Issue 1c. If the Federal Arbitration Act applied, the district court
erred in compelling Freudensprung to arbitrate his seaman's claims ........ 12

    The FAA excepts the employment contracts of all seaman ................ 13

    Freudensprung is a seaman................................................................. 13

        Freudensprung performed a substantial part of his work
        aboard the WB 318...................................................................... 13

        The WB 318 is a vessel............................................................... 14

        Freudensprung's work contributed to the WB 318's mission ..... 14

    Freudensprung cannot waive his seaman status.................................. 15

    Even if Freudensprung could contract away his status as a
    seaman, OTSI did not prove that contract was fair............................ 17

ISSUE TWO: The district court erred when it dismissed Willbros West
Africa for lack of personal jurisdiction............................................................ 18

    Standard of review ..................................................................................... 18

    The district court had jurisdiction over WWA ........................................... 19

        WWA has jurisdictionally sufficient contacts with Texas................... 19

        Specific jurisdiction exists over Willbros West Africa .............. 19

        General jurisdiction exists over Willbros West Africa................ 21

        Willbros West Africa failed to show the exercise of
        jurisdiction over it would be unfair............................................. 23

        Willbros West Africa made a general appearance and waived any
        complaint about personal jurisdiction .................................................. 23

        Willbros West Africa consented to a Texas forum ............................. 23

    Freudensprung did not have an opportunity for discovery prior to
    dismissal ..................................................................................................... 24

    Alternately, the Court should equitably toll limitations of
    Freudensprung's claims against Willbros West Africa.............................. 26

ISSUE THREE: Freudensprung timely filed his notice of appeal ................... 27

CONCLUSION ..................................................................................................... 29

CERTIFICATE OF SERVICE ............................................................................. 31

# TABLE OF AUTHORITIES

## <u>Cases</u>

Allen v. Okam Holdings, Inc., 116 F.3d 153 (5th Cir. 1997)................................. 29

American Heritage Life Ins. Co. v. Orr, 294 F.3d 702 (5th Cir. 2002)............... 1, 9

Apache Bohai Corp. v. Texaco-China, --- F.3d ---, No. 02-20489, 2003 WL 1983748 (5th Cir. April 30, 2003) ...................................................................1

ASW Allstate Painting & Constr. Co., Inc. v. Lexington Ins. Co., 188 F.3d 307 (5th Cir. 1999)............................................................................ 10

Babbitt v. Norfolk & Western Ry. Co., 104 F.3d 89 (6th Cir. 1997).................... 16

Barnes v. Farmland Nat'l Beef Packing Co., 169 F.Supp.2d 1235 (D. Kan. 2001) ................................................................................. 22

Barrett v. Chevron, U.S.A., 781 F.2d 1067 (5th Cir. 1986) ................................. 13

Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp., 289 F.3d 373 (5th Cir. 2002)............................................................................ 11

Brown v. State, 816 P.2d 1368 (Alaska 1991)....................................................... 16

Buckley v. Nabors Drilling USA, Inc., 190 F.Supp.2d 958 (S.D. Tex. 2002), aff'd mem., No. 02-40477, 2002 WL 31415106 (5th Cir. October 8, 2002) ................................................................................. 13

Central Freight Lines Inc. v. APA Transport Corp., 322 F.3d 376 (5th Cir. 2003) ................................................................................. 18, 20, 23

Clifford v. Gibbs, 298 F.3d 328 (5th Cir. 2002).................................................... 27

Cortes v. Baltimore Insular Lines, 287 U.S. 367 (1932) ...................................... 16

Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132 (Tex. 1994) ................................ 11

Ford v. NYLCare Health Plans of the Gulf Coast, Inc., 141 F.3d 243 (5th Cir. 1998)................................................................................. 10

Garrett v. Moore-McCormack Co., 317 U.S. 239 (1942)...................................... 17

Gonzalez v. Mission Am. Ins. Co., 795 S.W.2d 734 (Tex. 1990).......................... 11

Green Tree Fin. Corp.–Alabama v. Randolph, 531 U.S. 79 (2000).........................1

Hammack v. Baroid Corp., 142 F.3d 266 (5th Cir. 1998)............................... 28, 29

Harris v. Parker College of Chiropractic, 286 F.3d 790 (5th Cir. 2002)............... 11

Holt Oil & Gas Corp. v. Harvey, 801 F.2d 773 (5th Cir. 1986), cert. denied, 481 U.S. 1015 (1987) .......................................................................... 24

In re Godt, 28 S.W.3d 732 (Tex. App.—Corpus Christi 2000, orig. proceeding) ...................................................................................... 12

Jones v. Sheehan, Young, & Culp, P.C., 82 F.3d 1334 (5th Cir. 1996) ................. 23

Kelley-Coppedge, Inc. v. Highlands Ins. Co., 980 S.W.2d 462 (Tex. 1998) ......... 11

McDermott, Inc. v. Boudreaux, 679 F.2d 452 (5th Cir. 1982) ......................... 14, 15

Offshore Co. v. Robison, 266 F.2d 769 (5th Cir. 1959) ......................................... 14

Ope Int'l LP v. Chet Morrison Contractors, Inc., 258 F.3d 443 (5th Cir. 2001) .................................................................................................9

PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland), 260 F.3d 453 (5th Cir. 2001) ................................................................................ 24

Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952) ............................. 21

Philadelphia, Baltimore, & Washington R.R. Co. v. Schubert, 224 U.S. 603 (1912) ............................................................................................... 16

Reyes v. Delta Dallas Alpha Corp., 199 F.3d 626 (2nd Cir. 1999) ....................... 18

Sea-Land Serv., Inc. v. Sellan, 231 F.3d 848 (11th Cir. 2000) ............................. 15

Seas Shipping Co. v. Sieracki, 328 U.S. 85 (1946) ............................................... 16

Simpson v. Lykes Bros., Inc., 22 F.3d 601 (5th Cir. 1994) .................................... 17

Stipelcovich v. Sand Dollar Marine, Inc., 805 F.2d 599 (5th Cir. 1986) .............. 17

Williamson v. Tucker, 645 F.2d 404 (5th Cir.), cert. denied, 454 U.S. 897 (1981) ............................................................................................... 25

## Statutes

28 U.S.C. § 1291 .....................................................................................................1

28 U.S.C. § 1333 .....................................................................................................1

28 U.S.C. § 1916 .....................................................................................................1

45 U.S.C. § 55 ....................................................................................................... 15

46 App. U.S.C. § 688 ...................................................................................... 1, 15

46 App. U.S.C. § 763a ......................................................................................... 26

9 U.S.C. § 1 ........................................................................................ 13

9 U.S.C. § 16 ....................................................................................... 1

TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (Vernon 2002) ............................. 26

TEX. CIV. PRAC. & REM. CODE ANN. § 171.002 (Vernon Supp. 2002) ................. 12

## Rules

FED. R. APP. P. 26 ................................................................................. 2

FED. R. APP. P. 4 ........................................................................ 1, 27, 28

FED. R. CIV. P. 54 ............................................................................... 26

FED. R. CIV. P. 58 ............................................................................... 28

FED. R. CIV. P. 59 ............................................................................... 27

S.D. TEX. L.R. 7.3 ............................................................................... 25

## Miscellaneous

13B Charles Alan Wright, Federal Practice and Procedure § 3625 (2d ed. 1984) .......................................................................................... 22

# JURISDICTIONAL STATEMENT

A.     The district court had original jurisdiction pursuant to 28 U.S.C. § 1333(1), 28 U.S.C. § 1916, and 46 App. U.S.C. § 688 over Freudensprung's Jones Act and admiralty claims.

B.     This Court has appellate jurisdiction over this appeal from a final judgment pursuant to 28 U.S.C. § 1291 or 9 U.S.C. § 16(c) or both.

C.     On August 15, 2002, the district court entered a final order by closing the case pending a decision of "the Court of Appeals." Clerk's Record ("CR") 465; Record Excerpts ("RE") 2. An arbitration order is final and appealable where it leaves nothing left for the court to do but enforce the judgment. *See Green Tree Fin. Corp.–Alabama v. Randolph*, 531 U.S. 79, 86-87, 89 (2000); *American Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 707-708 (5th Cir. 2002) (holding an order compelling arbitration and closing the case was a reviewable final decision); *cf. Apache Bohai Corp. v. Texaco-China*, --- F.3d ---, No. 02-20489, 2003 WL 1983748 (5th Cir. April 30, 2003) (finding no final order where "the court did not purport to close the case administratively, nor did it attempt in any other way to terminate its involvement in the proceedings").

No separate judgment accompanied the order. Under FED. R. APP. P. 4(a)(7)(A)(ii), which became effective December 2, 2002, if a final order is entered without a separate judgment, a judgment is deemed entered 150 days after the

entry of the final order. Assuming that the December 2002 amendments to Rule 4 apply to orders entered prior to their effective date (as Freudensprung assumed out of caution), then a judgment was deemed entered pursuant to the August 15, 2002, order at the earliest 150 days later on Monday, January 13, 2003.[1] Freudensprung timely filed his Notice of Appeal 30 days later on February 12, 2003 (CR 527; RE 5), which was also 30 days after the date that the court denied Freudensprung's Motion for Entry of Judgment or, Alternately, for Clarification (CR 525; RE 4).

    D.    This is an appeal from a final judgment.

---

[1] The 150th calendar day fell on Sunday, January 12, but that day is not included under FED. R. APP. P. 26(a)(3).

## ISSUES PRESENTED

ISSUE ONE:  Whether the district court erred in compelling Freudensprung to arbitrate his claims against OTSI.

Issue 1a.  Whether the Federal Arbitration Act ("FAA") or the Texas General Arbitration Act ("TGAA") governs.

Issue 1b.  If the TGAA controls, whether a claimant may be compelled to arbitrate personal injury claims.

Issue 1c.  If the FAA controls, whether a seaman may be compelled to arbitrate by including a waiver of seaman status in the seaman's employment contract.

ISSUE TWO:  Whether the district court erred in dismissing Willbros West Africa for lack of personal jurisdiction.

ISSUE THREE:  Whether Freudensprung timely filed his notice of appeal.

## STATEMENT OF THE CASE

In July 2000, Fred Freudensprung suffered serious personal injuries while working as a barge leaderman in Nigerian waters. In October 2001, he brought Jones Act, unseaworthiness, negligence, and maintenance and cure claims against Offshore Technical Services, Inc. ("OTSI") and several other defendants, including Willbros West Africa ("WWA"). CR 12.

3

On December 21, 2001, WWA filed a Motion to Dismiss on the grounds of lack of personal jurisdiction and insufficient service of process (CR 41), which Freudensprung opposed (CR 324). On February 20, 2002, the district court, Judge Samuel Kent, dismissed Freudensprung's claims against WWA without prejudice for lack of personal jurisdiction. CR 345; RE 6.

On May 1, 2002, OTSI filed its Motion to Stay Plaintiff's Claims Pending Arbitration pursuant to the FAA and TGAA. CR 376. OTSI prayed for a stay pending arbitration of Freudensprung's claims under the Consultant's Agreement between OTSI and Freudensprung. CR 373. Freudensprung opposed the motion. CR 383; 445. On May 21, Judge Kent, sitting in the Galveston Division, *sua sponte* transferred venue of the case to the Houston Division of the Southern District of Texas. CR 394.

On August 15, 2002, the district court granted OTSI's motion for stay pending arbitration and ordered the case administratively closed pending "a ruling by the Court of Appeals." CR 465; RE 2. On August 23, Freudensprung moved for reconsideration of the arbitration order (CR 476), which the court denied (CR 496; RE 3).

On November 15, 2002, due to the district court's language staying the case until after a decision of this Court, Freudensprung filed his Motion for Entry of Judgment or, Alternately, Motion for Clarification. CR 505. If the court had

4

intended to enter a final order, Freudensprung sought entry of a separate judgment under FED. R. CIV. P. 58. If not, Freudensprung requested that the court clarify the stay would extend only until after arbitration of his claims and not until a decision by this Court.

On November 27, 2002, OTSI filed its Response to Plaintiff's Motion for Entry of Judgment or Motion for Clarification. CR 56. OTSI argued Freudensprung's motion for judgment was simply another motion for reconsideration and that the district court should deny the motion because the August 15 order was "a final, appealable order." CR 520. By order entered January 13, 2002, the district court denied Freudensprung's motion for entry of judgment and refused to clarify her August 15, 2002, order. CR 525; RE 4.

## STATEMENT OF FACTS

On November 27, 1997, Offshore Technical Services, Inc. ("OTSI") and Freudensprung entered into a Consultant's Agreement ("the Agreement"). CR 405-409; RE 7. The Agreement adopted Texas law, purported to negate Freudensprung's status as a seaman, and contained an arbitration clause. RE 7, ¶¶ 4, 5. The stated purpose of the Agreement was to contract for Freudensprung's services described in attached work orders, which were incorporated into the Agreement." RE 7, ¶ 1. Freudensprung's duties under the Agreement would

"consist of one or more specific work orders of varying duration." RE 7, ¶ 11. Accordingly, the Agreement specified that it was comprised of "this Agreement together with any Work Order referable thereto." RE 7, ¶ 9. The provisions of a work order control conflicting provisions in the Agreement: "All conflicting terms and conditions of the Agreement, express of implied, are hereby excluded.' RE 7, ¶ 9.

On June 24, 2000, OTSI and WWA entered into an Offshore Personnel Supply Agreement which was in effect at the time of Freudensprung's injuries. RE 8; CR 301-307. The purpose of that agreement was to set the terms under which OTSI, a Texas corporation, would supply employees to WWA. That agreement also contained an arbitration clause and specified that any arbitration would take place in Houston, Texas, pursuant to the American Arbitration Association's rules. RE 8, ¶ 6.

By Work Order No. 4 ("the Work Order") dated June 9, 2000, OTSI and Freudensprung agreed that he would work as a leaderman with WWA. RE 9. The Work Order contained its own specific arbitration clause: "All **contractual** disagreements, claims or disputes of any nature will be settled by arbitration." RE 9 (emphasis added).

On July 1, 2000, Freudensprung departed for Africa to begin his work as a barge leaderman aboard the WB 318, a seagoing derrick lay barge used to lay

pipeline and install marine structures like platforms and single-point moorings. CR 468. The project involved the WB 318 in the construction of a single point mooring system ("SPM") off the coast of Nigeria. An SPM is a floating structure that allows offshore loading/offloading of tankers from onshore tanks through an underwater pipeline. CR 468.

On July 28, 2000, the WB 318's crew was using winches to set in place enormous chains, hundreds of feet long with links weighing 200 pounds, to secure the SPM to the sea floor. The cable on one of the winches broke, and the loose chain, which had not been properly secured, struck Freudensprung and seriously injured him. CR 75-77.

## SUMMARY OF THE ARGUMENT

The claims of Freudensprung, a seaman, are not subject to arbitration under either the Federal Arbitration Act or the Texas General Arbitration Act. Nor are they subject to contractual annulment. The district court erred when it entered a final order compelling Freudensprung to arbitrate and forego his judicial remedies pending arbitration and a decision of this Court.

The district court also erred when it dismissed WWA for lack of personal jurisdiction without an opportunity for Freudensprung to conduct discovery into WWA's contacts with Texas. Even without that opportunity, Freudensprung made

a *prima facie* showing of minimum contacts sufficient to confer jurisdiction over WWA, which is administered from Texas. WWA also made a general appearance and consented to the district's court's jurisdiction when WWA asserted that discovery should be abated so that it could first arbitrate in Houston, Texas its disputes with OTSI stemming from Freudensprung's accident.

Finally, although the district court entered a final order on August 15, 2002, the court entered no separate judgment, refusing Freudensprung's request for entry of judgment or for clarification of that order. Under the December 2, 2002, amendments to FED. R. APP. P. 4, a judgment is deemed entered 150 days after the entry of a final order unaccompanied by a separate judgment. If those amendments apply to the August 15, 2002, order, then a judgment was deemed entered on January 13, 2003, and Freudensprung timely filed his notice of appeal 30 days later on February 12. If the latest amendments do not apply, then the time for Freudensprung to file his notice of appeal did not ever start, and his notice of appeal is timely.

## ARGUMENT

**ISSUE ONE: The district court erred in compelling Freudensprung to arbitrate his claims against OTSI.**

**Standard of review.** A district court's decision to compel arbitration is subject to *de novo* review, using the same standard as the court below. *See American Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 708 (5th Cir. 2002). As this Court has stated,

> Courts conduct a two-step inquiry when deciding whether parties must submit to arbitration. The first step is to decide whether the parties agreed to arbitrate their dispute. This determination involves two considerations:  (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. To resolve these issues, 'courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.' Once a court determines that the parties agreed to arbitrate, the court must assess 'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'

*Ope Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445-446 (5th Cir. 2001) (citations omitted).

**Issue 1a. The Texas General Arbitration Act governs the arbitration agreement between Freudensprung and OTSI.**

Even if the Agreement involves commerce covered by the Federal Arbitration Act ("FAA"), the parties may agree that state arbitration laws apply. This is because the federal policy underlying the FAA is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate. *See,*

*e.g., Ford v. NYLCare Health Plans of the Gulf Coast, Inc.*, 141 F.3d 243, 247 (5th

Cir. 1998). Therefore, where the parties specify their contract shall be governed by

the laws of the State of Texas, the Texas General Arbitration Act ("TGAA")

applies to any arbitration provision in the contract. *See ASW Allstate Painting &*

*Constr. Co., Inc. v. Lexington Ins. Co.*, 188 F.3d 307, 310 (5th Cir. 1999).

Here, the Agreement expresses the parties' clear intent that any arbitration

issues be subject to Texas state law:

> The construction, validity, and performance of this Agreement and all
> matters pertaining thereto shall in all respects be governed by the
> Laws of the State of Texas. This provision shall apply
> notwithstanding the nationality of domicile of the Consultant or that
> the Services shall be provided outside the State of Texas.

RE 7, ¶ 4. Thus, the TGAA governs the Agreement.

### Issue 1b. Under the TGAA, the district court erred in compelling Freudensprung to arbitrate his personal injury claims.

For two reasons, the TGAA provides no basis for the district's court's order

compelling arbitration: (1) Freudensprung did not agree to arbitrate his personal

injury claims, and (2) the TGAA precludes arbitration of personal injury claims.

<u>Freudensprung did not agree to arbitrate tort claims.</u>  The Work Order for

Freudensprung's employment provides that contractual disputes would be subject

to arbitration. RE 9. Under the Agreement, the provisions of a work order control

conflicting provisions in the Agreement: "All conflicting terms and conditions of

the Agreement, express or implied, are hereby excluded.' RE 7, ¶ 9. This is

consistent with the axiom of contract interpretation that specific provisions control general provisions. *See Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 377 (5th Cir. 2002); *see also Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133-34 (Tex. 1994).

Further, a court should give effect to all provisions of a contract so that none will be rendered meaningless. *See Harris v. Parker College of Chiropractic*, 286 F.3d 790, 794 (5th Cir. 2002) (citing *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998)). The Work Order's specific limitation is meaningless were the Court to interpret the Agreement—which incorporates the Work Order—as requiring arbitration of tort claims.

Should any ambiguity exist in the Agreement and Work Order concerning the scope of arbitration, any ambiguity must be construed against the drafter. *See Parker College*, at 793 (citing *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 737 (Tex. 1990)). OTSI apparently drafted the Agreement. It bears OTSI's pre-printed name, and Freudensprung's appears typed in. OTSI is referred to by name in the body of the agreement, while Freudensprung is simply referred to as "Consultant." RE 7. The source of the arbitration agreement is obvious.

In short, the Work Order's arbitration provision for contractual disagreements governs the scope of Freudensprung's agreement to arbitrate. He

agreed to arbitrate contractual and not tort claims. RE 9. The district court erred in forcing him to arbitrate his tort claims.

The TGAA does not require arbitration of personal injury claims. The TGAA does not apply to a claim for personal injury unless (1) each party to the claim, on the advice of counsel, agrees in writing to arbitrate, and (2) the agreement is signed by each party and each party's counsel. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.002(a)(3) and (c) (Vernon Supp. 2002). Thus, a court errs when it compels arbitration of a personal injury claim under the TGAA. *See In re Godt*, 28 S.W.3d 732, 738-739 (Tex. App.—Corpus Christi 2000, orig. proceeding) (issuing mandamus relief to correct order compelling arbitration of personal injury claim).

Here, Freudensprung brought claims against OTSI for the personal injuries he suffered aboard the WB 318. The TGAA does not require him to arbitrate those claims, and the district court erred it compelled him to do so and abated his claims pending arbitration.

### Issue 1c. If the Federal Arbitration Act applied, the district court erred in compelling Freudensprung to arbitrate his seaman's claims.

Even if the FAA applied, the district court's order is wrong for two reasons: (1) as discussed above, Freudensprung did not agree to arbitrate his tort claims, and (2) the FAA contains an exception for contracts of seamen.

The FAA excepts the employment contracts of all seaman. Under the FAA, "[n]othing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in interstate commerce." 9 U.S.C. § 1. This exclusion precludes a court from compelling arbitration of Jones Act and general negligence claims pursuant an arbitration clause in a seaman's employment contract. *See Buckley v. Nabors Drilling USA, Inc.*, 190 F.Supp.2d 958, 961-966 (S.D. Tex. 2002), *aff'd mem.*, No. 02-40477, 2002 WL 31415106 (5th Cir. October 8, 2002).

Freudensprung is a seaman. To prove seaman status, a claimant must show that (1) he was permanently assigned to a vessel or fleet or performed a substantial part of his work on the vessel or fleet and (2) his work contributed to the mission of the vessel or fleet. *See Barrett v. Chevron, U.S.A.*, 781 F.2d 1067, 1073-1074 (5th Cir. 1986) (en banc). Freudensprung's affidavit provided the undisputed evidence of his actual job duties on the WWA project. CR 466-468.

*Freudensprung performed a substantial part of his work aboard the WB 318.* After boarding the WB 318 in Choba, Nigeria, Freudensprung spent all of his time—eating, sleeping, and working—aboard the barge. But for his injuries, Freudensprung would have remained aboard the WB 318 during transport to its next location. Non-crew personnel would have been transported to shore via helicopter. CR 467. This evidence establishes Freudensprung was permanently

assigned to the WB 318 and performed a substantial part of his work aboard the WB 318 or both.

*The WB 318 is a vessel.* A vessel includes any structure designed to float on water regardless whether it is used as a means of transport by water. *See McDermott, Inc. v. Boudreaux*, 679 F.2d 452, 457 (5th Cir. 1982) (quoting *Offshore Co. v. Robison*, 266 F.2d 769, 799 (5th Cir. 1959)). A lay barge is a vessel. *See id.*, at 458-459.

Willbros Group's Form 10-K describes the WB 318 as a derrick/lay barge. CR 288. The WB 318 looked and operated like a boat. It had an identifiable bow and stern, a raked bow, navigational lights, mooring structures, winches, life-saving equipment, crew quarters, and bilge pumps. It traveled across the water from place to place and job to job. Weekly "abandon ship" drills were conducted. CR 467. It is undisputed the WB 318 was a floating lay barge and, thus, a vessel.

*Freudensprung's work contributed to the WB 318's mission.* The WB 318's purpose was to transport workers and equipment to the project site and, once there, serve as a platform from which to aid in the SPM's construction. Freudensprung's duties aided the WB 318's mission in both respects, navigating to the project site and constructing the SPM.

He helped prepare the WB 318 for its voyage from Choba to the SPM project site. The WB 318 traveled with a smaller tow boat, and Freudensprung

helped prepare that tow. When the WB 318 reached open water, Freudensprung assisted in breaking tow and making new tow lines to the larger, ocean-going anchor boats. Freudensprung spliced lines, made up wire rope, operated winches and other equipment, rigged up and broke down tows, and in all respects acted like a member of the barge's deck crew. At sea, Freudensprung assisted in operating the WB 318 while under tow to the SPM project site. Once there, Freudensprung continued his duties as a member of the barge's crew in setting up the SPM. CR 467. In short, Freudensprung proved he was a seaman. *See McDermott, Inc. v. Boudreaux*, 679 F.2d at 455-456 (worker on lay barge who aids in the barge's mission is a seaman).

<u>Freudensprung cannot waive his seaman status.</u> OTSI argued in the district court that Freudensprung had contracted away any seaman's claims in the Agreement. The Agreement purports to waive any seaman's rights Freudensprung enjoys and to limit him to Texas workers' compensation benefits. RE 7, ¶¶ 4, 21.

The Jones Act grants a seaman, such as Freudensprung, statutory rights similar to railway employees. *See* 46 App. U.S.C. § 688(a). Any attempt to limit such an employee's statutory rights is "void." 45 U.S.C. § 55. Section 55 applies to attempts to limit a seaman's rights. *See Sea-Land Serv., Inc. v. Sellan,* 231 F.3d 848, 850-853 (11th Cir. 2000) (analyzing validity of seaman's release under 45 U.S.C. § 55)

This provision forbids any general release of a worker's statutory rights, even if the worker has attempted to surrender those rights in exchange for an alternate benefit scheme. *See Philadelphia, Baltimore, & Washington R.R. Co. v. Schubert,* 224 U.S. 603, 611-612 (1912). Under § 55, a worker's surrender of his statutory rights must reflect a bargained-for settlement of a known claim for a specific injury, as contrasted with an attempt to extinguish potential future claims the employee might have arising from injuries known or unknown by him. *See Babbitt v. Norfolk & Western Ry. Co.*, 104 F.3d 89, 93 (6th Cir. 1997).

A contract that purports to bargain away a seaman's Jones Act rights in exchange for state workers' compensation benefits is void. *See Brown v. State*, 816 P.2d 1368, 1373-1374 (Alaska 1991) (construing § 55). Similarly, a seaman's right to maintenance and cure cannot be abrogated by contract. *See Cortes v. Baltimore Insular Lines*, 287 U.S. 367, 371 (1932). Nor may the right to recover for unseaworthiness be contractually limited. *See Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 94-95 (1946) ("[L]iability [for unseaworthiness] is neither limited by conceptions of negligence nor contractual in character . . . It is a form of absolute duty owing to all [seamen].").

In sum, the Agreement's provisions do not defeat Freudensprung's rights to recover as a seaman, whether arising under the Jones Act, unseaworthiness, or

maintenance and cure. Freudensprung may not be compelled to arbitrate those claims or to wait to pursue them pending arbitration.

Even if Freudensprung could contract away his status as a seaman, OTSI did not prove that contract was fair. In cases involving a seaman's post-claim surrender of his rights (such as a traditional settlement), "[s]eamen are wards of admiralty and any release or settlement involving their rights is subject to careful scrutiny." *Stipelcovich v. Sand Dollar Marine, Inc.,* 805 F.2d 599, 606 (5th Cir. 1986). The party asserting the defense of release bears the burden of proving the fairness of the release—

> We hold, therefore, that the burden is upon one who sets up a seaman's release to show that it was executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his rights. The adequacy of the consideration and the nature of the medical and legal advice available to the seaman at the time of signing the release are relevant to an appraisal of this understanding.

*Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 248 (1942). Additional factors include whether the parties negotiated at arm's length and in good faith and whether there was the appearance of fraud or coercion. *See Simpson v. Lykes Bros., Inc.*, 22 F.3d 601, 602 (5th Cir. 1994).

The evidence before the district court showed any release through the Agreement was inherently unfair. Freudensprung could not have made an informed decision concerning his post-injury remedies before his injury had occurred and

before any medical advice was available to him. Further, Freudensprung's purported trade of his seaman's rights for state workers' compensation benefits was unfair. State benefits are not a fair substitute for a seaman's claims. *See Reyes v. Delta Dallas Alpha Corp.*, 199 F.3d 626, 628-629 (2nd Cir. 1999) (holding compensation benefits are analogous only to maintenance and cure, and receipt of maintenance and cure does not preclude a seaman from making other claims). OTSI presented no evidence describing the circumstances under which Freudensprung executed the Agreement or demonstrating that the terms of the Agreement were proper. Thus, OTSI cannot fairly enforce Freudensprung's purported waiver of his status as a seaman.

**ISSUE TWO: The district court erred when it dismissed Willbros West Africa for lack of personal jurisdiction.**

**Standard of review.** This Court reviews a district court's dismissal for lack of personal jurisdiction *de novo*. When the district court does not conduct an evidentiary hearing, the plaintiff need only present sufficient facts to make out a *prima facie* case supporting jurisdiction. The court shall accept as true plaintiff's uncontroverted allegations (so long as the allegations are not merely conclusory) and resolve all factual conflicts in plaintiff's favor. *See, e.g., Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).

Exercising personal jurisdiction over a nonresident defendant is consistent with constitutional due process when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice. "Minimum contacts" can be established either through contacts sufficient to assert specific jurisdiction, or contacts sufficient to assert general jurisdiction. *See Central Freight*, at 380-381. A nonresident can establish contact with the forum by taking purposeful and affirmative action, the effect of which is to cause business activity (foreseeable by the defendant) in the forum state. *See id.*, at 382 & n.6.

**The district court had jurisdiction over WWA.** WWA maintains continuous and systematic contacts with Texas, and Freudensprung's claims stem from several of them. The district court also enjoyed jurisdiction over WWA due to WWA' general appearance and implicit consent.

<u>WWA has jurisdictionally sufficient contacts with Texas.</u> Freudensprung presented a *prima facie* case that the district court had both specific and general jurisdiction over WWA.

*Specific jurisdiction exists over Willbros West Africa.* When a nonresident defendant has purposefully directed its activities at the forum state and the

litigation results from alleged injuries that arise out of or relate to those activities, the defendant's contacts are sufficient to support the exercise of specific jurisdiction over that defendant. *See Central Freight*, at 380-381.

WWA contracted with a Texas corporation, OTSI, to provide workers for WWA. RE 8. WWA agreed to be "fully responsible for management and organization of work on the offshore vessels to which OTSI personnel are assigned." RE 8, ¶ 5. WWA also required OTSI to maintain Texas workers' compensation coverage and to include WWA as an additional insured on OTSI's insurance policies. RE 8, ¶ 9. It further agreed to pay OTSI in Texas. RE 8, ¶ 18. The Personnel Supply Contract specified that any dispute between OTSI and WWA would be resolved by arbitration in Houston, Texas. RE 8, ¶ 7.

WWA's choice of Texas as a forum for arbitration was not surprising. Although supposedly headquartered in Panama, WWA has earned no income there. CR 241. "The Company" is administered from Houston by Willbros USA (CR 228, 296) and leases offices in Houston (CR 278). "The Company," according to Willbros Group's Form 10-K, includes "Willbros Group, Inc. and all of its majority-owned subsidiaries," such as WWA. CR 297, 231.[2]

---

[2] The district court apparently misunderstood the relevance of Willbros Group's 10-K as depending solely on alter ego. RE 6 at 9-11. Willbros Group's Form 10-K, as discussed, includes information concerning both Willbros Group and WWA, revealing that they both are administered in Texas by Willbros USA. This misunderstanding infects the district court's entire analysis.

Further, press releases concerning WWA issued from Houston. CR 214; 201 (including mention of the WB 318, the site of Freudensprung's accident). Michael F. Curran, listed as a Director, Vice Chairman of the Board of Directors, President, and Chief Operating Officer of the Company (CR 274), resides in Houston, Texas (CR 101).

In short, the evidence viewed in the light most favorable to Freudensprung, shows WWA chose to be administered from Texas and to lease offices in Texas. It negotiated and contracted with a Texas company and contemplated resolution of disputes in Texas. The WWA contract with OTSI led to Freudensprung's work for WWA aboard the WB 318, where he was hurt and for which WWA had agreed to be fully responsible. Accordingly, specific jurisdiction exists over WWA, whose contacts with Texas exceed those in the cases upon which the district court erroneously relied. RE 6 at 6-7 (citing *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773 (5th Cir. 1986), *cert. denied*, 481 U.S. 1015 (1987), and *Stuart v. Spademan*, 772 F.2d 1185 (5th Cir. 1985)).

*General jurisdiction exists over Willbros West Africa.* Even if specific jurisdiction were lacking, general jurisdiction exists. As discussed above, WWA is administered from Texas by Willbros USA. A corporation maintains continuous and systematic contacts with a state from which it directs foreign operations. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447-448 (1952). Thus,

21

WWA's choice to administer its operations from Texas should, by itself, establish jurisdiction over WWA in Texas. *Cf. Barnes v. Farmland Nat'l Beef Packing Co.*, 169 F.Supp.2d 1235, 1238 (D. Kan. 2001) (holding location of administrative offices may establish corporation's citizenship; quoting 13B Charles Alan Wright, *Federal Practice and Procedure* § 3625 at pp. 625-32 (2d ed. 1984)).

In addition to the contacts referred to in the discussion of specific jurisdiction, "the Company" (i.e., Willbros Group and its subsidiaries, including WWA) also purchased a Houston based company in 2000. CR 282. From 1997-1998, the Company constructed a 45-mile gas pipeline system in Texas and Mexico. CR 290. The Company is currently providing project management and engineering services on the Caballero Pipeline Project which will transport natural gas to the Texas Panhandle. CR 282.

In short, the evidence, when viewed in the light most favorable to Freudensprung, shows that WWA is administered in Texas, leases offices in Texas, has negotiated contracts in Texas, is publicized in Texas, has selected Texas as a forum for dispute resolution, has required Texas insurance coverage to be purchased, has required a Texas corporation to list it as an additional insured on its other insurance policies. WWA has maintained continuous and systematic contacts with Texas sufficient to support the exercise of general jurisdiction over WWA. The district court erred in concluding otherwise.

*Willbros West Africa failed to show the exercise of jurisdiction over it would be unfair.* Once a plaintiff establishes minimum contacts between the defendant and the forum state, the burden of proof shifts to the defendant to make a compelling case that the assertion of jurisdiction is unfair and unreasonable. *See Central Freight*, 322 F.3d at 384. WWA made no attempt to meet this burden, having presented no evidence to the district court to support dismissal and argued solely that minimum contacts were lacking. CR 41.

Willbros West Africa made a general appearance and waived any complaint about personal jurisdiction. A party makes a general appearance whenever it invokes the judgment of the court on any question other than jurisdiction. In determining whether conduct is sufficient to be considered a general appearance, the focus is on affirmative action that impliedly recognizes the court's jurisdiction over the parties. Requesting a stay pending arbitration constitutes a general appearance. *See Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1340-41 (5th Cir. 1996). Here, WWA implicitly recognized the district court's jurisdiction when it asserted in the Rule 26 report that the court should abate discovery on Freudensprung's claims pending arbitration. CR 63. WWA waived any complaint about personal jurisdiction.

Willbros West Africa consented to a Texas forum. An agreement to arbitrate is a legal arrangement by which a litigant may impliedly consent to personal

jurisdiction in the forum in which it has agreed to arbitrate. *See PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 461 (5th Cir. 2001). In the Offshore Personnel Supply Agreement with OTSI, WWA agreed to arbitrate any dispute with OTSI in Houston, Texas. RE 8, ¶ 7. Therefore, WWA consented to jurisdiction in the Southern District of Texas.

Judge Kent reasoned that, although the arbitration forum selection clause would allow OTSI to assert jurisdiction over WWA in Texas for disputes arising from Freudensprung's accident, Freudensprung could not. RE 6 at 7-8. This makes no sense. Under this rationale, OTSI and WWA could properly be in Houston federal court arguing over who is liable for Freudensprung's damages, and Freudensprung would have no say in that proceeding and no right to enforce his rights in Texas. Simply put, WWA consented to jurisdiction in Texas for disputes arising from its employment of Freudensprung, whether those disputes are asserted by OTSI or Freudensprung.

**Freudensprung did not have an opportunity for discovery prior to dismissal.** A minimum contacts analysis is "fact intensive." *Holt Oil & Gas Corp*, 801 F.2d at 779 n.5. A district court must give a plaintiff facing a motion to dismiss for lack of personal jurisdiction an opportunity for discovery to develop the facts in a manner that is adequate in the context of the disputed issues and

evidence. *See Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981).

WWA filed its motion to dismiss on December 21, 2001. CR  44. On December 31, 2001, the parties, excluding OTSI who had not yet been served, held their Rule 26 meeting. CR 65. The Willbros Defendants, including WWA, felt that no discovery should occur until the Court had ruled on the motion to dismiss and until arbitration had occurred between "Defendants-Willbros," presumably WWA, and OTSI. Freudensprung felt that discovery should not begin until 30 days after OTSI had been served, and estimated April 5, 2002, as an appropriate date after which OTSI would be served and discovery should start. CR 63- 64.

On January 4, 2002, the district court conducted a Rule 16 conference. CR 66. On January 10, Freudensprung timely served his response to WWA's motion, which was due 20 days after the motion was filed. *See* S.D. Tex. L.R. 7.3. Freudensprung's response included a request to conduct discovery. CR 311-312. On February 11, 2002, OTSI appeared. CR 334. Nine days later, on February 20, the district court granted WWA's motion to dismiss for lack of personal jurisdiction. RE 6.

During the brief period Freudensprung had to respond, he diligently labored to provide the evidence, discussed above, which he believes establishes jurisdiction over WWA. CR 100-324. If the Court concludes this evidence does not support

jurisdiction, it at least supports the probability that discovery into WWA's contacts with Texas will reveal sufficient minimum contacts. Freudensprung exercised diligence both before and after dismissal. The district court erred in denying Freudensprung the chance to conduct discovery concerning the motion, such as WWA's additional contacts with Texas, the location of WWA's bank accounts and directors and officers and employees, whether WWA conducts any business from its purported headquarters in Panama, the degree to which Texas personnel engage in and direct WWA's activities, the degree to which Willbros Group and WWA's are operated as distinct companies, and the contract negotiations and other contacts between WWA and OTSI and other Texas companies.

Freudensprung was, discovery-wise, given the bum's rush in the trial court. He should be allowed a reasonable opportunity to develop his case.

**Alternately, the Court should equitably toll limitations of Freudensprung's claims against Willbros West Africa.** Freudensprung sued WWA in October 2001 just over a year after his July 2000 accident, well within both the federal three-year (46 App. U.S.C. § 763a) and state two-year (TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (Vernon 2002)) limitations periods. Judge Kent's dismissal order was non-final and subject to reconsideration until Judge Gilmore, erroneously and unexpectedly, entered a final order staying the case pending a decision by this Court. *See* FED. R. CIV. P. 54(b) (non-final orders are

subject to revision prior to final judgment). At the time the final arbitration order stayed the case, Freudensprung was attempting discovery into WWA's contacts with Texas for the purpose of revisiting the court's dismissal order. CR 449.

If this Court upholds the district court's dismissal of WWA, by that time limitations will have expired on Freudensprung's claims. However, the dismissal was without prejudice. Therefore, if the Court upholds the district court's dismissal of WWA, Freudensprung requests that the Court equitably toll the statute of limitations during the lower court proceedings, this appeal, and any further proceedings on remand. *See Clifford v. Gibbs*, 298 F.3d 328, 333 (5th Cir. 2002).


**ISSUE THREE: Freudensprung timely filed his notice of appeal.**

The Court's briefing notice requested that the parties brief the following—

Whether the notice of appeal is timely filed as to each of the decisions, orders, and rulings of the district court, as specified in the notice of appeal. <u>See</u> Fed. R. App. P. 4(a)(1)(A), 4(a)(4)(A) (specifying the circumstances under which a post-judgment motion extends the time to appeal).

Under FED. R. APP. P. 4(a)(1)(A), the notice of appeal is due within 30 days after entry of judgment. If a party files a motion to alter or amend the judgment within 10 days of the judgment under FED. R. CIV. P. 59, then the notice of appeal is due within 30 days of the ruling on the motion. *See* FED. R. APP. P. 4(a)(4)(A)(iv); FED. R. CIV. P. 59(b).

Here, as set forth in Freudensprung's Statement of the Case, the district court entered no final order until August 15, 2002, when it stayed the case pending a decision by this Court. RE 2. The district court never entered a separate judgment, as required by FED. R. CIV. P. 58(a).

Prior to the December 2, 2002, amendments to FED. R. APP. P. 4, the district court's failure to enter a separate judgment would have prevented Freudensprung's notice of appeal from ever being untimely because the time to appeal began to run on entry of a separate judgment. *See Hammack v. Baroid Corp.*, 142 F.3d 266, 269-270 (5th Cir. 1998). Effective December 2, 2002, FED. R. APP. P. 4 was amended to deem a judgment entered 150 days after the entry of a final order if no separate judgment were entered. *See* FED. R. APP. P. 4(a)(7)(A)(ii).

Out of caution, Freudensprung assumed that the December 2002 amendments to FED. R. APP. P. 4 apply to orders entered prior to their effective date, including the district court's August 15, 2002, order. If so, then a judgment was deemed entered 150 days later on January 13, 2003. Thus, the earliest that Freudensprung's notice of appeal could have been due was 30 days later on February 12, which was the date Freudensprung timely filed his notice of appeal.

If the December 2002 amendments to FED. R. APP. P. 4 do not apply to orders entered prior to their effective date, then Freudensprung's notice of appeal

was also timely. The time for him to file his notice of appeal never started. *See Hammack.*, 142 F.3d at 269-270.

In short, regardless of the application of the amendments to FED. R. APP. P. 4, Freudensprung timely filed his notice of appeal of the Court's August 15, 2002, final order as well as all prior non-final orders, such as the dismissal of WWA, which became appealable upon the entry of a final order. *See, e.g., Allen v. Okam Holdings, Inc.*, 116 F.3d 153, 154 (5th Cir. 1997) (holding order which dismissed one of several defendants, on ground of lack of personal jurisdiction, was neither a final nor an appealable order).

## CONCLUSION

For these reasons, Freudensprung requests that the Court reverse the district court's order compelling arbitration and staying the case, reverse the district court's order dismissing WWA for lack of personal jurisdiction, order that Freudensprung's claims are not subject to arbitration, order that Freudensprung's claims not be stayed pending arbitration, order that jurisdiction exists over WWA, equitably toll Freudensprung's claims against WWA (as alternate relief), remand for further proceedings, and award Freudensprung his costs and all other proper relief.

Respectfully submitted,

HUSEMAN & PLETCHER
600 Leopard Street, Suite 2100
Corpus Christi, Texas 78473
(361) 883-3563
FAX: (361) 883-0210


_____

CLIFF GORDON
State Bar No. 00793838

## CERTIFICATE OF SERVICE

On May 28, 2003, seven true hardcopies and one electronic copy of the foregoing brief were mailed via first-class mail, postage pre-paid, to the Clerk and two hardcopies and an electronic copy of the foregoing brief were served via certified mail, return receipt requested, on the following:

Mr. Michael Murphy                    Mr. Michael Varner
Hays, McConn, Rice                    Brown Sims
          & Pickering                 10th Floor
1200 Smith Street                     1177 W. Loop South
Houston, Texas  77002                 Houston, Texas  77027


_____
CLIFF GORDON