NO. 03-20226

_____

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

**FRED FREUDENSPRUNG**,

APPELLANT

VS.

**OFFSHORE TECHNICAL SERVICES, INC., et al.**,

APPELLEES

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

_____

**APPELLANT'S REPLY BRIEF**

_____

CLIFF GORDON
FED ID #19259
TX BAR #00793838
HUSEMAN & PLETCHER
600 LEOPARD, SUITE 2100
CORPUS CHRISTI, TX 78473
TEL:  361/883-3563
FAX:  361/883-0210

ATTORNEYS FOR APPELLANT

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ ii

TABLE OF AUTHORITIES ............................................................................... iii

ARGUMENT ...................................................................................................... 1

    ISSUE ONE: The district court erred in compelling Freudensprung to arbitrate his claims against OTSI ........................................................... 1

        The FAA does not require arbitration ............................................. 1

            Freudensprung is a seaman ...................................................... 2

            The FAA's exception for seaman's employment contracts applies to all such contracts ...................................................... 3

            The Consultant's Agreement is a seaman's employment contract ........ 4

        Texas law does not require arbitration .......................................... 6

    ISSUE TWO: The district court erred when it dismissed Willbros West Africa for lack of personal jurisdiction ............................................... 6

    ISSUE THREE: Freudensprung timely filed his notice of appeal ..................... 9

CONCLUSION .................................................................................................. 13

CERTIFICATE OF SERVICE ............................................................................ 14

# TABLE OF AUTHORITIES

## <u>Cases</u>

Baker v. Mercedes Benz of N. Am., 114 F.3d 57 (5th Cir. 1997).................... 10, 11

Bankers Trust Co. v. Mallis, 435 U.S. 381 (1978) ............................. 9, 10

Brown v. Nabors Offshore Corp., Inc., No. 02-31138, 2003 WL 21697428 (5th Cir. August 6, 2003)......................................................................4

Covey v. Arkansas River Co., 865 F.2d 660 (5th Cir. 1989) ...................................8

Governor and Co. of Bank of Scotland v. Sabay, 211 F.3d 261 (5th Cir. 2000) .................................................................................................4

Guidry v. South Louisiana Contractors, Inc., 614 F.2d 447 (5th Cir. 1980)..............5

InterFirst Bank Dallas, N.A. v. FDIC, 808 F.2d 1105 (5th Cir. 1987)................... 11

McDermott Int'l, Inc. v. Wilander, 498 U.S. 337 (1991)..........................................2

Rogers v. U.S., 452 F.2d 1149 (5th Cir. 1971)........................................................2

Southwest Marine, Inc. v. Gizoni, 502 U.S. 81 (1991) ...........................................2

Theriot v. ASW Well Serv., Inc., 951 F.2d 84 (5th Cir. 1992) ............................. 10

Valentin v. Ocean Ships, Inc., 38 F. Supp. 2d 511 (S.D.Tex. 1999).........................8

Wilson v. Zapata Off-Shore Co., 939 F.2d 260 (5th Cir. 1991)................................8

## <u>Statutes</u>

9 U.S.C. § 1 ...........................................................................................................3

9 U.S.C. § 2...........................................................................................................3

TEX. LAB. CODE ANN. § 406.031 (Vernon 1996).....................................................5

## <u>Rules</u>

FED. R. APP. P. 4 ............................................................................................. 11, 12

FED. R. CIV. P. 58 ..................................................................................................9

## <u>Miscellaneous</u>

THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW, Vol. 1, § 6-1, at 239 (2d ed. 1994)...............................................................................................4

## ARGUMENT

Appellees' briefs raise various issues, many of which are adequately addressed in Freudensprung's principal brief. This reply brief addresses only those issues which Freudensprung believes warrant further attention.

**ISSUE ONE: The district court erred in compelling Freudensprung to arbitrate his claims against OTSI.**

**The FAA does not require arbitration.** Freudensprung's principal argument under the Federal Arbitration Act ("FAA") is that, as a seaman, the FAA does not give effect to a provision in an employment contract requiring him to arbitrate his claims. In its brief, Offshore Technical Services, Inc., ("OTSI") disavows any argument that Freudensprung may waive his status as a seaman or any seaman's claims he may have. *OTSI's brief*, at 20 ("[OTSI ] is arguing not that Plaintiff is a seaman waiving his rights, but that he is not a seaman . . . .").[1] OTSI, rather, theorizes that Freudensprung is not a seaman, and, even if he is, the Consultant's Agreement is not an employment contract and does not evidence a "maritime transaction" to which the seaman's exception applies, and, also, that Freudensprung was not a seaman engaged in the transportation of goods in commerce. *OTSI's brief*, at 16-19.

---

[1] This is contrary to its argument before the district court: "Plaintiff . . . waived any rights as a seaman." CR 493.

Freudensprung is a seaman. In arguing Freudensprung lacks seaman status, OTSI relies on its intentions not to hire seamen, employ seamen, or provide seamen to other companies; it claims it intended to provide a pipefitter to work on offshore platforms. *OTSI's brief*, at 18-19. OTSI's intentions before Freudensprung filed suit, however, differed boldly from the intentions it professed post-suit. OTSI's standing agreement with Willbros West Africa ("WWA") was to provide WWA with personnel for "marine operations" to be "assigned" to "offshore vessels." Appellant's Record Excerpts 8 at 1-2. This Court has also noted that "pipefitters are often found among a ship's crew." *Rogers v. U.S.*, 452 F.2d 1149, 1153 n.2 (5th Cir. 1971). More importantly, OTSI's intentions are irrelevant to determining seaman status because "[i]t is not the employee's particular job that is determinative, but the employee's connection to a vessel." *Southwest Marine, Inc. v. Gizoni,* 502 U.S. 81, 89 (1991) (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 354 (1991)).

OTSI further implies Freudensprung was a "nonmaritime land-based worker[] only temporarily working aboard a vessel." *OTSI's brief*, at 19. No evidence suggests that Freudensprung's work aboard the WB 318, which OTSI does not dispute is a vessel, was an aberration. As already mentioned, OTSI's contract with WWA contemplated marine operations and Freudensprung's assignment to vessels. Further, Freudensprung attested that he had served aboard

2

the WB 318 in 1998 prior to his 2000 service during which he was injured. CR

468. After boarding the WB 318 in Choba, Nigeria, in 2000, Freudensprung spent

all of his time—eating, sleeping, and working—aboard the barge and doing the

ship's work. But for his injuries, Freudensprung would have remained aboard the

WB 318 during transport to its next location. Non-crew personnel would have been

transported to shore via helicopter. CR 467. In short, Freudensprung's connection

to the WB 318 made him a seaman.

> The FAA's exception for seaman's employment contracts applies to all such

contracts. Under 9 U.S.C. § 2, the FAA generally upholds the validity of an

arbitration provision in a "maritime transaction" or transaction involving

"commerce." The scope of the FAA is controlled by 9 U.S.C. § 1, which defines

both "maritime transaction" and "commerce" as follows:

> "Maritime transactions", as herein defined, means charter parties, bills
> of lading of water carriers, agreements relating to wharfage, supplies
> furnished vessels or repairs to vessels, collisions, or any other matters
> in foreign commerce which, if the subject of controversy, would be
> embraced within admiralty jurisdiction; "commerce", as herein
> defined, means commerce among the several States or with foreign
> nations, or in any Territory of the United States or in the District of
> Columbia, or between any such Territory and another, or between any
> such Territory and any State or foreign nation, or between the District
> of Columbia and any State or Territory or foreign nation, but nothing
> herein contained shall apply to contracts of employment of seamen,
> railroad employees, or any other class of workers engaged in foreign
> or interstate commerce.

Thus, the exception for contracts of seamen is not limited to "maritime transactions"; it also applies to railroad worker's contracts and expressly states that "nothing herein"—meaning nothing in the FAA—requires arbitration of their claims.

It also makes no sense that a seaman's employment contract could fail to qualify as a "maritime transaction" under the FAA. "The protection of seamen was one of the principal reasons for the development of admiralty as a distinct branch of law." *Governor and Co. of Bank of Scotland v. Sabay*, 211 F.3d 261, 266 (5th Cir. 2000) (quoting THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW, Vol. 1, § 6-1, at 239 (2d ed. 1994)), *cert. denied*, 531 U.S. 959 (2000). Moreover, a seaman does not have to be involved in the transportation of goods for his employment to be excepted from arbitration under the FAA. *Brown v. Nabors Offshore Corp., Inc.*, No. 02-31138, 2003 WL 21697428, Slip op. at 7-8 (5th Cir. August 6, 2003) ("We conclude, therefore, that Circuit City supports Brown's view that, as a seamen, § 1 excludes his employment contract from the application of the FAA, even if he was not engaged in . . . commerce."). In short, the FAA excludes from its reach every arbitration provision in all seamen's employment contracts.

The Consultant's Agreement is a seaman's employment contract. OTSI argues that the Consultant's Agreement is not a employment agreement because the agreement contemplated his service as an independent contractor. OTSI,

however, concedes the Consultant's Agreement is the agreement under which Freudensprung was performing services for OTSI at the time he was injured. *OTSI's brief*, at 16. The Consultant's Agreement is also plainly the agreement under which OTSI seeks to have Freudensprung arbitrate his seaman's claims against OTSI and WWA. Additionally, as discussed above, Freudensprung is a seaman. In short, the Consultant's Agreement was the basis on which OTSI hired Freudensprung, a seaman, and is now the basis for OTSI's argument that Freudensprung must arbitrate his employment-related seaman's claims against OTSI. This is precisely the type of contract the FAA excepts from its grasp.

Furthermore, although the Consultant's Agreement speaks in terms of Freudensprung's service as an independent contractor, the other side of OTSI's mouth agreed that Freudensprung would be OTSI's employee. Appellant's Record Excerpts 8 at 1. OTSI also impermissibly had Freudensprung agree to limit his claims to the receipt of Texas workers' compensation benefits, which are available only to employees. Appellant's Record Excerpts 7 at 2; TEX. LAB. CODE ANN. § 406.031 (Vernon 1996). In addition, a seaman may have more than one employer, *e.g., Guidry v. South Louisiana Contractors, Inc.*, 614 F.2d 447, 452 (5th Cir. 1980), and Freudensprung has asserted seaman's claims against OTSI and the Willbros Defendants. The FAA does not require arbitration of those claims.

**Texas law does not require arbitration.**  Relying on procedural grounds, OTSI claims that Freudensprung failed to properly raise Texas law in the trial court. *OTSI's brief*, at 22. As a practical matter, if Texas law were not before the district court, then it could not serve as a basis to compel arbitration. OTSI, however, raised Texas law (CR 494, 492-491, 415-414, 374-373), and Freudensprung argued before the district court that he need not arbitrate his claims under Texas law (CR 444).


**ISSUE TWO: The district court erred when it dismissed Willbros West Africa for lack of personal jurisdiction.**

WWA and OTSI both brief WWA's dismissal. At first glance OTSI's arguing about the dismissal of WWA may seem curious. However, that is the natural, foreseeable result of WWA's contacts with Texas. Under its agreement with OTSI, WWA exacted OTSI's agreement that OTSI would indemnify WWA against claims relating to personnel supplied to WWA. Appellant's Record Excerpts 8 at 1, 5. Presumably concerned about this indemnification provision, the Houston-based company that WWA contracted with, OTSI, and OTSI's Houston-based attorneys are contesting a liability OTSI may have to bear. This further demonstrates the pervasiveness of WWA's Texas contacts.

Further, both WWA and OTSI contend that the Willbros Group, Inc. ("WGI") Form 10-K is no evidence of WWA's contacts with Texas because "the

Company" discussed in the Form 10-K is WGI and not WWA. *WWA's brief*, at 21; *OTSI's brief*, at 27. To the contrary, the 10-K describes how "the Company" purchased the WB 318, the WWA-owned vessel where Freudensprung's accident occurred, and further described it as part of "the Company's marine fleet." CR 288. Thus, no doubt can exist that "the Company" includes WWA and that WGI's 10-K informs about WWA's operations and, thus, contacts with Texas. If any doubt existed, that doubt would be construed in Freudensprung's favor. His burden, as set forth in his principal brief, is simply to create a *prima facie* case of jurisdiction over WWA.

Further, the 10-K states that "the Company," which includes WWA, is administered from Texas. CR 228, 296. This fact is confirmed by the press releases concerning WWA issued in Texas. CR 201, 214. Neither WWA nor OTSI directly denies that WWA is administered in Texas. WWA, however, contends that if WWA were administered from Texas, no issue would arise concerning the corporate distinction between WWA and the Texas company which administers it. *WWA's brief*, at 25-26. WWA either misses Freudensprung's point or wants to deflect attention from it. That point is that a company administered in Texas, such as WWA, should be subject to jurisdiction in Texas regardless whether it is the alter ego of a Texas company. This is especially so in light of WWA's other

contacts with Texas discussed in Freudensprung's principal brief that confer specific and general jurisdiction over WWA.

Even if the Court were to disagree with Freudensprung concerning jurisdiction over WWA under the current record, limitations should be equitably tolled during this appeal for any subsequent suit in which Freudensprung may establish jurisdiction over WWA. *Cf. Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 267-268 (5th Cir. 1991) (suggesting that equitable tolling should apply to a seaman's claims but refusing to toll limitations because seaman's prior suit claimed longshoreman status). Freudensprung sued WWA only a year after his claims accrued. Freudensprung opposed WWA's dismissal in the trial court and is contesting the district court's order in this Court. Neither the district court nor WWA has ever suggested any U.S. district court would be a proper forum for any "protective suit" against WWA. Nor has WWA or OTSI provided any case law which suggests that limitations should not be equitably tolled in favor of a seaman while appealing a dismissal order he opposed. *See Covey v. Arkansas River Co.*, 865 F.2d 660 (5th Cir. 1989) (plaintiff suffered two prior dismissals on jurisdictional grounds, apparently appealed neither dismissal, and only asked for tolling after filed third claim beyond limitations.); *Valentin v. Ocean Ships, Inc.*, 38 F. Supp. 2d 511 (S.D. Tex. 1999) (refusing to toll limitation during prior suit in which plaintiff refused to oppose jurisdiction); *Bennett v. U.S. Lines, Inc.*, 64 F.3d

62 (2nd Cir. 1995) (not discussing equitable tolling in context of tolling during pendency of prior proceeding).

**ISSUE THREE: Freudensprung timely filed his notice of appeal.**

Although neither contends the district court entered a separate judgment, both OTSI and WWA argue that Freudensprung's notice of appeal was untimely, having been filed more than 30 days after entry of an appealable order. That an appealable order has been entered does not start the time for filing a notice of appeal.

Under the version of FED. R. CIV. P. 58 in effect prior to the December 1, 2002[2] (when Appellees contend Freudensprung lost his appellate rights), upon a district court's final decision, a separate judgment must issue. The purpose of the separate-judgment rule, which must be "mechanically applied," is to clarify the time for appeal to prevent the loss of the right to appeal. *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 384, 386 (1978). Preservation of appellate rights through a separate judgment is particularly relevant where a suit involves interlocutory

---

[2] Rule 58 was amended effective December 1, 2002, after the time Appellees contend Freudensprung's appellate rights were lost, to specify that a separate judgment must be entered on every final order except an order disposing of a motion to amend or alter a judgment. FED. R. CIV. P. 58(a). The exception for orders disposing of a motion to amend or alter a judgment makes sense because it presumes, by definition, a judgment has been entered. Without a separate judgment, no effective judgment exists to alter or amend.

decisions which can be "saved up" and appealed after a final determination is made. *Theriot v. ASW Well Serv., Inc.*, 951 F.2d 84, 88 (5th Cir. 1992). Even where the a final order states that "[i]t is a final judgment," the time for filing a notice of appeal does not run until the court enters a separate judgment *Baker v. Mercedes Benz of N. Am.*, 114 F.3d 57, 60-61 (5th Cir. 1997).

Where a court has entered a final decision, a party may waive the separate-judgment requirement by proceeding to appeal without raising the separate-judgment issue. *Mallis*, at 387-388. Under *Mallis*, a decision may be appealed without benefit of a separate document if, but only if, the district court and the parties, without objection, intended that the ruling be a final decision. A party makes such an objection known "by filing in the district court a motion for entry of final judgment." *Theriot*, 951 F.2d at 88.

Here, OTSI moved for non-final relief—a stay pending arbitration—and the district court granted the motion without expressly dismissing, either in the order granting the motion or in a separate document, any of Freudensprung's claims against OTSI or the Willbros Defendants other than WWA. The district court did include a provision in her August 15, 2002, order implying that she was granting final relief by referencing a decision of the Court of Appeals. To find out what the court meant in the absence of any dismissal language, Freudensprung asked for

clarification or a separate judgment. Thus, Freudensprung never waived a separate judgment.

The only case cited by either OTSI or WWA concerning application of separate-judgment rule is *InterFirst Bank Dallas, N.A. v. FDIC*, 808 F.2d 1105, 1109 (5th Cir. 1987). The appellant in *InterFirst* attempted to appeal an order on a Rule 59 motion to alter a separate judgment entered following trial without properly filing another notice of appeal. The post-judgment order in *InterFirst* also expressly disposed of the only issue in the case, and the parties treated it as final order without objection and without any claim of confusion as to the order's effect. These facts are readily distinguishable from the facts of Freudensprung's appeal.

Furthermore, this Court has criticized the *InterFirst* line of cases as inconsistent with FED. R. APP. P. 4. *Baker v. Mercedes Benz of N. Am.*, 114 F.3d at 60 n.12. It would be disingenuous to disregard the separate-judgment rule by equating a ruling on a motion to reconsider, directed at an order on a motion not seeking final relief and entered without a separate judgment, with a ruling on a motion to alter a judgment sufficient to trigger the appellate timetables. There is no more reason to bestow finality on such an order as there is to an order entered without a separate judgment. The filing of a motion to reconsider an order should not transform the order into an effective judgment. The need for a separate

judgment to clarify the time for appeal and to preserve the right to appeal remains the same.

Simply put, one party asked for arbitration of the claims against it, and the district court granted it. After exploring whether the court would reconsider its arbitration order which implied it was a final order without expressly addressing all of Freudensprung's claims, Freudensprung insisted on his right to a separate judgment, which was never entered. When an appellant such as Freudensprung insists on his right to a separate judgment, his time for filing a notice of appeal does not run until the entry of such a judgment.

That is true, at least, under the former version of Rule 4. Effective December 1, 2002, FED. R. APP. P. 4 was amended to deem a judgment entered 150 days after the entry of a final order if no separate judgment was entered. FED. R. APP. P. 4(a)(7)(A)(ii). If applicable to Freudensprung's appeal, an order was deemed entered 150 days after the August 15, 2002, order on January 13, 2003. Thus, the earliest that Freudensprung's notice of appeal could have been due was 30 days later on February 12, which was the date Freudensprung timely filed his notice of appeal.

## CONCLUSION

For these reasons, Freudensprung requests that the Court reverse the district court's order compelling arbitration and staying the case, reverse the district court's order dismissing WWA for lack of personal jurisdiction, order that Freudensprung's claims are not subject to arbitration, order that Freudensprung's claims not be stayed pending arbitration, order that jurisdiction exists over WWA, equitably toll Freudensprung's claims against WWA (as alternate relief), remand for further proceedings, and award Freudensprung his costs and all other proper relief.


Respectfully submitted,

HUSEMAN & PLETCHER
600 Leopard Street, Suite 2100
Corpus Christi, Texas 78473
(361) 883-3563
FAX: (361) 883-0210


_____
CLIFF GORDON
State Bar No. 00793838

## CERTIFICATE OF SERVICE

On August 18, 2003, seven true hardcopies and one electronic copy of the foregoing brief were mailed via first-class mail, postage pre-paid, to the Clerk and two hardcopies and an electronic copy of the foregoing brief were served via certified mail, return receipt requested, on the following:

Mr. Michael Murphy  
Ms. Susan Stevenson  
Hays, McConn, Rice  
      & Pickering  
1200 Smith Street  
Houston, Texas  77002

Mr. Kenneth Engerrand  
Mr. Michael Varner  
Brown Sims  
10th Floor  
1177 W. Loop South  
Houston, Texas  77027

_____

CLIFF GORDON